J.R. LOVELL and Louva H. Lovell, Appellants,

v.

WESTERN NATIONAL LIFE INSURANCE COMPANY, Appellee.

No. 07–87–0149–CV.

Court of Appeals of Texas, Amarillo.

May 31, 1988.

Rehearing Denied June 29, 1988.

Joe K. Longley, Longley & Maxwell, Austin, for appellants.

Wyatt Brooks and Charles R. Watson, Jr., Culton, Morgan, Britain & White, Amarillo, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

DODSON, Justice.

This is an appeal from a judgment following the trial of claims resulting from foreclosure on ranch land owned by Mr. and Mrs. J.R. Lovell, appellants. Suit was brought by the Lovells against Western National Life Insurance Company seeking damages for wrongful foreclosure, breach of the duty of good faith and fair dealing, and usury. The wrongful foreclosure claim was disposed of by summary judgment granted in favor of the Lovells. After a jury trial on the two remaining causes of action, the trial court granted an instructed verdict on the issue of the duty of good faith and fair dealing, and the jury found that the alleged charge of usurious interest was the result of an accidental and bona fide error. Based on its prior rulings and the jury's answers to the special issues, the trial court rendered judgment in damages on the Lovells' wrongful foreclosure action and denied recovery on their actions for damages for alleged usury and breach of the alleged good faith and fair dealing duty by a mortgagee to a mortgagor.

The Lovells challenge the judgment by four points of error claiming (1) the trial court erred in failing to disregard the jury's answer to the special issue regarding the bona fide error defense to the claim of usury; and (2) a cause of action exists for the breach of the duty of good faith and fair dealing between a mortgagor and a mortgagee, and there was evidence to support such a breach. Western National challenges the judgment by one cross-point of error asserting the granting of the Lovells' motion for summary judgment on the wrongful foreclosure action was error. We affirm in part, and reverse and render in part.

On 17 March 1979, the Lovells purchased the Overton Ranch in Donley County, Texas for $251,600 above the existing indebtedness on the property. A deed of trust for the full amount was executed in favor of Warlick Thomas, trustee. The note was subsequently assigned to Western National. The property had a prior first lien to Equitable Life Assurance Society in the original principal sum sum of $350,000.

The note on the ranch land became overdue and back taxes had not been paid by the Lovells. Western National made a payment to Equitable Life of $45,337.04 in order to protect Western National's second lien position. Additionally, Western National paid $6803.40 in past due taxes. After making the two payments, Western National wrote a series of letters to the Lovells requesting they bring their obligations up to date.

When the demand letters were unsuccessful, Western National scheduled a trustee's sale for 1 February 1983, in order to satisfy the Lovells' obligations. Western National appointed J.D. Christy, its vice-president at the time, as substitute trustee for the purposes of the foreclosure sale. The foreclosure sale was held, and Western National bid the amount of indebtedness against the property and received a trustee's deed. Western National subsequently resold the property at a loss of $16,332.88.

On 15 March 1985, the Lovells filed suit against Western National alleging wrongful foreclosure, breach of the duty of good faith and fair dealing, and usury. The Lovells' wrongful foreclosure action alleged that Western National had wrongfully conducted the foreclosure by appointing its vice-president as substitute trustee without consulting the original trustee to determine if he could not or would not act to enforce the trust. The Lovells filed a

motion for partial summary judgment asserting that no material fact issue existed with regard to this cause of action. Attached to the motion was a copy of the deed of trust which said that a substitute trustee may be appointed with or without cause at the option of the holder of the indebtedness. The Lovells also attached admissions of Western National admitting that no agent of Western National contacted the original trustee prior to the appointment of the substitute trustee and an affidavit from the original trustee saying he was willing and able to act as trustee. The trial court granted partial summary judgment based on this motion and the accompanying pleadings and affidavits. The court held that, as a matter of law, the vice-president of Western National was not authorized to sell the Lovells' property at the foreclosure sale held on 1 February 1983.

The Lovells' second cause of action involved the alleged breach of the duty of good faith and fair dealing. The Lovells asserted that the foreclosure sale constituted a breach of the duty of good faith and fair dealing which allegedly arose from the special relationship of the parties to the deed of trust. The Lovells' evidence with regard to this claim was identical to the evidence on the wrongful foreclosure claim. Western National moved for an instructed verdict at the close of the evidence alleging, *inter alia*, that an alleged breach of the duty of good faith and fair dealing is not a separate cause of action in a wrongful foreclosure fact situation. This portion of Western National's motion was granted by the trial court and the issues concerning such a breach were not submitted to the jury.

The Lovells' third cause of action was based on usury. The usury claim was the only action upon which issues were submitted to the jury. Their claim was based on two identical letters sent by Western National to Mr. and Mrs. Lovell on 3 January 1983. The letters, in part, read: "We are this date making demand for payment in full of the principal balance of $150,-000.00 plus accrued interest thereon as of January 1, 1983 in the amount of $37,-375.00 for a total due of $187,375.00." This letter was signed by J.D. Christy as substitute trustee.

It is not disputed that the correct amount of interest owed by the Lovells was $12,-375. However, Western National claims the letters were accidentally sent to the Lovells and a correction letter was sent the following day. The record contains a correction letter dated 4 January 1983, stating that Western National incorrectly stated the interest due as $37,375 which was actually the total payment due for principal and interest on 1 January 1983. The letter corrected the amount of interest due to $12,375 and corrected the total amount due to $162,375. An issue was submitted to the jury on bona fide error and was answered in favor of Western National. The trial court granted judgment on the jury's verdict and the Lovells now appeal from that judgment.

### *The Usury Claim*

By their first point of error, the Lovells claim the trial court erred in refusing to grant their motion to disregard the jury's answer to special issue number three and in refusing to render judgment for them on their usury claims.

■ Special issue three states:

You are instructed that "bona fide" as used in the following Special Issue is defined to mean in good faith.

### *Special Issue No. 3*

Do you find ... that the charging of interest, if any, in the letters of January 4, 1983, was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such errors?

Answer "yes" or "no"

ANSWER:  Yes

Article 5069–1.06 of the Texas Revised Civil Statutes Annotated (Vernon 1987) provides that there shall be no penalty for any charge of usurious interest which results from accidental or bona fide error. The

defense of bona fide error was properly submitted to the jury as a controlling issue.

■ The Lovells claim the issue is defective because it inquires whether the charging of *interest* was due to bona fide error. They contend that the relevant question is whether the charging of *usurious* interest was the result of bona fide error.

Appellants have waived their right to complain of this alleged error on appeal. Although they objected to special issue number three on several grounds, they failed to specifically state that the issue should contain the term "usurious interest" instead of merely "interest." Rule 274 of the Texas Rules of Civil Procedure requires that "[a] party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint ... is waived unless specifically included in the objections." The purpose of making objections to the court's charge is to give the trial court an opportunity to correct any errors in the charge. *Donnelley Marketing v. Lionel Sosa, Inc.*, 716 S.W.2d 598, 601 (Tex.App.—Corpus Christi 1986, no writ). The Lovells did not give the trial court this opportunity; therefore, they have waived point of error number one.

■ Assuming, arguendo, that the point was properly preserved, it does not present reversible error. Although Rule 279 of the Texas Rules of Civil Procedure requires an issue to be in substantially correct form, the issue need not conform specifically to the pleadings. *Placencio v. Allied Industrial Int'l, Inc.*, 724 S.W.2d 20, 21 (Tex. 1987). Instead, a substantially correct issue is one which "in substance and in the main is correct, and that is not affirmatively incorrect." *Id; Modica v. Howard*, 161 S.W.2d 1093, 1094 (Tex.Civ.App.—Beaumont 1942, no writ). In submitting issues to the jury, the trial court is only required to frame its questions in such plain language as the jury can easily understand. *Wells v. Hodges*, 604 S.W.2d 218, 220 (Tex. Civ.App.—San Antonio 1980, no writ). In reviewing the entire record, we conclude the question was phrased in language sufficient for the jury to understand the issue

before them. The Lovells' first point of error is overruled.

### The Good Faith and Fair Dealing Claim

■ By points two, three, and four, the Lovells claim the trial court erred (1) in partially granting Western National's motion for instructed verdict; (2) in refusing to submit special issues relating to a breach of the duty of good faith and fair dealing; and (3) in overruling the Lovells' motion for new trial because a cause of action exists for the breach of the duty of good faith and fair dealing between a mortgagor and mortgagee. The points present one issue, that being whether a cause of action exists for the breach of a duty of good faith and fair dealing between a mortgagor and mortgagee.

The duty of good faith and fair dealing does not exist in Texas unless intentionally created by express language in a contract or unless a special relationship of trust and confidence exists between the parties to the contract. *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). *See also English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983) (Spears, J. concurring). The deed of trust in this case does not expressly provide for a duty of good faith and fair dealing; therefore, we must look to whether a special relationship existed between the parties to the transaction.

Justice Spears, in his concurring opinion, states that the special relationship necessary to create such a duty either arises from the element of trust necessary to accomplish the goals of the contract, or has been imposed by the courts because of an imbalance of bargaining power. *English v. Fischer*, 660 S.W.2d at 524. In *Arnold v. Nat'l County Mut. Fire Ins. Co.*, the supreme court found a duty of good faith and fair dealing between the parties to an insurance contract. In discussing the special relationship between the parties, the Court stated:

> In the insurance context, a special relationship arises out of the parties' unequal bargaining power and the nature

of insurance contracts which would allow for unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims.

725 S.W.2d at 167.

An earlier supreme court case described a confidential relationship as either a recognized fiduciary relationship, which as a matter of law is a relationship of trust and confidence, or a more formal relationship arising from moral, social, domestic, or personal relationships. *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962). In addition, this Court has held that proof of a confidential relationship requires dealings of long standing to justify reliance by the complaining party. *Consolidated Bearing & Supply Co. Inc. v. First National Bank at Lubbock,* 720 S.W.2d 647, 649 (Tex.App.—Amarillo 1986, no writ).

There is no Texas authority on the question of whether there exists a fiduciary relationship between a mortgagor and mortgagee; however, the great weight of authority is that while the relationship between the mortgagor and mortgagee is often described as one of trust, technically it is not of a fiduciary character. *Hush v. Reaugh,* 23 F.Supp. 646, 651 (D.C.Ill.1938); *Simpson v. Fry,* 194 N.C. 623, 140 S.E. 295, 297 (1927); *Baumgard v. Bowman,* 31 Ohio App. 266, 167 N.E. 166, 166–67 (1928); *Crockett v. Root,* 194 Okl. 3, 146 P.2d 555, 559 (1944). Therefore, we must determine whether an informal special relationship such as that described in *English v. Fischer* and *Arnold v. Nat'l County Mut. Fire Ins. Co.* exists. In analyzing the transaction in the instant case, we find neither a long standing personal or social relationship between the parties, nor do we find an imbalance of bargaining power. We conclude there exists no special relationship between the parties to this agreement and, therefore, no duty of good faith and fair dealing is implied. The Lovells' second, third, and fourth points of error are overruled.

### Western's Challenge to the Wrongful Foreclosure Claim

By its cross-point of error, Western National claims the trial court erred in rendering judgment against Western National on the Lovells' claim of wrongful foreclosure. The trial judge granted an interlocutory partial summary judgment based on two findings. First, the trial court found, as a matter of law, that J.D. Christy was not properly appointed as substitute trustee according to the terms of the deed of trust. Second, the trial court found that the substitute trustee was not authorized to sell the Lovells' property at the foreclosure sale held on 1 February 1983.

The deed of trust contains the following clause:

In any event, with or without cause or reason, at the option of the holder of the indebtedness, a successor and substitute Trustee may be named, constituted and appointed by the said holder of said indebtedness, without other formality than an appointment and designation in writing; and this conveyance shall vest in him, as Trustee, the estate and title in all said premises and he shall thereupon hold, possess and execute all the title, rights, powers and duties herein conferred on said Trustee named, and his conveyance to the purchaser shall be equally valid and effective; and such right to appoint a successor or Substitute Trustee shall exist as often and whenever from any of said causes, any Trustee, original or substitute, cannot or will not act.

The trial court construed this clause as requiring an intention by the original trustee not to act or an inability to act. It is undisputed that the original trustee was never approached and questioned about his unwillingness or inability to act. Thus, the trial court found the appointment of the substitute trustee was improper and, therefore, rendered the foreclosure wrongful.

Western National argues that the first phrase, allowing a substitute trustee to be named "with or without cause or reason" controls over the last phrase of the clause which gives the right to appoint a substitute trustee "as often and whenever from

**304**

any of said causes, any trustee ... cannot or will not act." We agree.

We acknowledge that our Texas courts are committed to the proposition that, where a deed of trust provides that a substitute trustee shall be appointed only after a request and refusal to act on the part of the trustee named therein, no valid appointment of a substitute trustee is shown in the absence of proof of a request and refusal to act on the part of the named trustee. *Bracken v. Bounds*, 96 Tex. 200, 71 S.W. 547, 548 (1903). However, that rule is limited to the situation where the deed of trust specifically provides that a substitute trustee shall be appointed only after the originally named trustee fails or refuses to act after a request to act by the holder of the indebtedness.

In this instance, by broad and sweeping language, the deed of trust provides that: "[i]n any event, with or without cause or reason, at the option of the holder of the indebtedness, a successor and substitute Trustee may be named, constituted and appointed by the said holder of said indebtedness, without other formality than an appointment and designation in writing." In that regard, the provision further states that this "conveyance *shall* vest in him [the substitute trustee], as Trustee, the estate and title in all said premises and he shall thereupon hold, possess and execute all the title, rights, powers and duties herein conferred on said Trustee named, and his conveyance to the purchaser shall be equally valid and effective...."

We are persuaded that the independent clause to the effect that "such right to appoint a successor or Substitute Trustee shall exist as often and whenever, from any of said causes, any Trustee, original or substitute, cannot or will not act" is accumulative to the broad and sweeping power granted and stated in the preceding clauses. Nevertheless, even if we assume, arguendo, that there are irreconcilable conflicts between the first stated provision of the paragraph in question and the last stated provision, under well settled rules of construction, the first stated provisions must prevail over the last stated provision.

*See Benskin v. Barksdale*, 246 S.W. 360, 363 (Tex.Comm'n App.1923, judgm't adopted).

Since it is undisputed that Western National was the holder of the indebtedness and appointed and designated the substitute trustee in writing, the record conclusively establishes that the substitute trustee had the power and authority to sell and convey the mortgaged property. Accordingly, we must conclude that the trial court erred by determining the foreclosure was wrongful and awarding damages against Western National Bank for foreclosing. Western National's cross-point of error is sustained.

In summary, we overrule the Lovells' points of error and affirm that portion of the judgment which denies the Lovells any recovery on their usury claims and for their claim for damages on the alleged breach of good faith and fair dealing duty action. Also, we sustain Western National's cross-point, reverse that portion of the judgment awarding the Lovells damages for wrongful foreclosure and render judgment that the Lovells take nothing on their wrongful foreclosure action against Western National.