**Pralhad S. JHAVER, Plaintiff–Appellee,**

v.

**ZAPATA OFF–SHORE CO., Defendant–Appellant.**

No. 89–2426.

United States Court of Appeals, Fifth Circuit.

June 18, 1990.

Rehearing Denied July 18, 1990.

---

Robert J. Malone, Chris A. Lorenzen, Crain, Caton & James, Houston, Tex., for defendant-appellant.

John M. Zukowski, Bernard B. Athey, Jr., Campbell, Athey & Zukowski, Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, GARWOOD and DAVIS, Circuit Judges.

GOLDBERG, Circuit Judge:

Pralhad S. Jhaver ("Jhaver"), the plaintiff, sued Zapata Off–Shore Company ("Zapata"), the defendant, for commissions owed. The district court granted Jhaver summary judgment. We reverse and remand.

## I. THE FACTS

During Fall 1982, Zapata asked Jhaver to help Zapata obtain drilling contracts with the Oil & Natural Gas Commission of India (the "ONGC"). Jhaver and Zapata formalized their relationship, in part, by signing letters of commission (the "Letters"). The Letters awarded Jhaver commissions if Zapata obtained an ONGC contract with Jhaver's assistance.

Each Letter referred to an ONGC bid tender number which identified ONGC bid tenders. A bid tender is the ONGC's offer to use drilling rigs. The ONGC publishes bid tenders to announce its need for drilling rigs at specific times and locations. Time and location condition ONGC drilling contracts and thus the Letters.

With Jhaver's assistance, in 1983, Zapata and the ONGC contracted for one year for Zapata's Bonito I (the "B–1") drilling rig's services. Jhaver and Zapata signed a letter of commission which stated that Jhaver

would receive commissions from this contract. Then from 1984 to 1986, Zapata contracted with the ONGC for the B–I's services through a joint venturer, Asia Foundation and Construction, Ltd., without Jhaver's assistance.

In 1984 and 1985, however, Zapata acknowledged to Jhaver a commitment to remunerate him for his efforts towards the B–I contract. Zapata paid B–I contract commissions to Jhaver until May 1986. Explaining the discontinuation of commissions, in September 1986, Zapata stated to Jhaver that: (a) Zapata and Jhaver agreed regarding Jhaver's B–I services; (b) Jhaver breached this agreement; and therefore, (c) Zapata could rightfully terminate it.

## II. THE OUTCOME BELOW

Jhaver sued Zapata in federal district court and claimed that Zapata promised to pay him commissions as long as the B–I continued to serve the ONGC. Jhaver sued under five theories: (1) breach of contract; (2) declaratory judgment[1]; (3) promissory estoppel; (4) quantum meruit; and, (5) breach of the implied covenant of good faith and fair dealing. Zapata argued that it limited any promise to Jhaver to the 1983 B–I bid.

Jhaver moved for summary judgment. The district court granted the motion. The court concluded that:

> Zapata is under a continuing obligation to pay commissions to Jhaver on the ...

[B–I]. Jhaver's employment termination is irrelevant.... As to Jhaver's suit for commissions due regarding the ... [B–I] rig, the Court ... [concludes] that Zapata is estopped to deny that the obligation exists.

Zapata appeals.

## III. DISCUSSION

### A. *Breach of Contract*

Although Zapata and Jhaver acknowledge that a contract for Jhaver's services exists, they dispute its terms. Jhaver claims the contract entitles him to commissions commensurate with the B–I's service in India while Zapata claims the contract limits Jhaver's commissions to the Letters' bid-specific terms. This contract is ambiguous.

■ Under Texas law, if a court may interpret a contract more than one way, it is ambiguous.[2] Ambiguity presents a question of law.[3] We review questions of law de novo.[4]

The Letters, numerous telexes, and other communications in the record comprise the contract between Zapata and Jhaver. Deposition testimony suggests that the Letter's bid-specific terms limits Jhaver's commissions. The depositions, however, in addition to the telexes and the other communications, are contradictory because they also reveal that Zapata would compensate Jhaver for his B–I services as long as the B–I operated in India. We may interpret

---

1. Jhaver sought a declaratory judgment under Texas Civil Practice and Remedies Code Annotated section 37.001 et seq. (Vernon 1986). This statute allows courts to declare parties' contract rights. As the opinion states, however, because the contract is ambiguous, a jury must determine its terms.

2. *Richland Plantation Co. v. Justiss–Mears Oil*, 671 F.2d 154, 156 (5th Cir.1982) ("A contract is ambiguous when, after applying established rules of construction, it is reasonably susceptible to more than one meaning...."); *R & P Enterprises v. LaGuarta, Gavrel & Kirk Inc.*, 596 S.W.2d 517, 519 (Tex.1980) ("If a written instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. On the other hand, a contract is ambiguous only when the application of the applicable rules of interpretation to the instrument leave it genuinely un-

certain which one of the two meanings is the proper meaning....").

3. *Southern Natural Gas Co. v. Pursue Energy*, 781 F.2d 1079, 1081 (5th Cir.1986) ("The interpretation of an unambiguous contract is a matter of law...."); *Richland Plantation Co.*, 671 F.2d at 156 ("Under Texas law, the determination of whether or not a contract is ambiguous in order to permit extrinsic evidence of intent is a question of law."); *Steuber Co. v. Hercules Inc.*, 646 F.2d 1093, 1098 (5th Cir.1981) ("Under Texas law, the interpretation of an unambiguous contract, as well as the determination of whether or not a contract is ambiguous, is a legal question.").

4. *USX Corp. v. Tanenbaum*, 868 F.2d 1455, 1457 (5th Cir.1989) ("[Q]uestions of law are subject to de novo review.").

the contract in more than one way. The contract is therefore ambiguous.[5]

Interpreting an ambiguous contract raises factual questions, specifically, deciding the contract's terms.[6] Relevant extrinsic or parol evidence establish these terms,[7] which reflect the parties' intent. Ascertaining the parties' intent may, however, present a genuine issue of material fact.[8] If so, a district court should not grant summary judgment.

■ In this case, the relevant record evidence, the Letters, the depositions, the telexes, and the other communications, raises a genuine issue of material fact. Does the contract limit Jhaver to the Letter's bid-specific terms? A jury must answer. Clearly, the district court erred by granting Jhaver summary judgment on this issue.[9]

### B. *Quantum Meruit*

■ Under Texas law, quantum meruit awards service provider's the reasonable value of services rendered unless the parties already contracted for the services.[10]

---

**5.** *See supra* note 2.

**6.** *Southern Natural Gas Co.,* 781 F.2d at 1081 ("The interpretation of an unambiguous contract is a matter of law; the interpretation of an ambiguous contract is a matter of fact...."); *Carpenters Amended & Restated Health v. Holleman,* 751 F.2d 763, 764 (5th Cir.1985) ("[T]he interpretation of an ambiguous contract is a question of fact ..."); *Richland Plantation Co.,* 671 F.2d at 156 ("Once the contract is found to be ambiguous, however, the determination of the parties intent becomes a question of fact...."); *Steuber Co.,* 646 F.2d at 1098 ("Under Texas law, the interpretation of an unambiguous contract, as well as the determination of whether or not a contract is ambiguous, is a legal question. But once it is determined that a contract is ambiguous, the determination of the actual intent of the parties becomes a factual question.").

**7.** *Carpenters Amended & Restated Health,* 751 F.2d at 766–67 ("In some cases ... even by looking at the entire document, ambiguities cannot be resolved—the document as a whole is ambiguous. To resolve these ambiguities, a court can no longer rely solely on the language of the contract to determine the parties' intent, and must look to extrinsic or parol evidence."); *Richland Plantation Co.,* 671 F.2d at 156 ("When several documents represent one agreement, all must be construed together in an attempt to discern the intent of the parties, reconciling apparently conflicting provisions and attempting to give effect to all of them, if possible."); *Aetna Insurance Company v. Neville G. Penrose Inc.,* 304 F.2d 612, 616 (5th Cir.1962) ("[W]hen there is a dispute as to what was the agreement or whether a writing represents a term of the oral agreement, or when the writing is ambiguous, extrinsic evidence may be introduced to show what the real agreement was. That determination is one of fact and should be made by the jury."); *R & P Enterprises,* 596 S.W.2d at 519 ("If after applying the established rules of interpretation, a written instrument remains reasonably susceptible to more than one meaning, extraneous evidence is admissible to determine the true meaning of the instrument.");

**8.** Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, that: "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Southern Natural Gas Co.,* 781 F.2d at 1081 ("Thus, a district court ... may not grant summary judgment when a contract is ambiguous and the parties' intent presents a genuine issue of material fact."); *Cook Industries Inc. v. Community Grain Inc.,* 614 F.2d 978, 980 (5th Cir.1980) ("Although interpretation of a contract is normally a question of law for the Court, that interpretation frequently depends heavily on the resolution of factual disputes. And it is the function of the trier of fact to resolve such factual disputes."); *R & P Enterprises,* 596 S.W.2d at 519 ("If after applying the established rules of interpretation, a written instrument remains reasonably susceptible to more than one meaning, extraneous evidence is admissible to determine the true meaning of the instrument. Normally, a summary judgment based on such a record is improper.").

**9.** *Carpenters Amended & Restated Health* at 766–67 (5th Cir.1985) ("In some cases ... even by looking at the entire document, ambiguities cannot be resolved—the document as a whole is ambiguous. To resolve these ambiguities, a court can no longer rely solely on the language of the contract to determine the parties' intent, and must look to extrinsic or parol evidence. Consequently, in these cases, questions of contract interpretation are questions of fact ... and the clearly erroneous standard of review applies."); *Godchaux v. Conveying Techniques Inc.,* 846 F.2d 306, 314–15 (5th Cir.1988) (We review unambiguous contracts de novo and we review ambiguous contracts under the clearly erroneous standard).

**10.** *Infra–Pak Inc., v. Carlson Stapler & Shippers Supply Inc.,* 803 F.2d 862, 864 (5th Cir.1986) ("Texas law precludes quantum meruit recovery, however, if the recovery sought is the sub-

Zapata and Jhaver acknowledge that they contracted for Jhaver's services. Although ambiguous, this contract includes Jhaver's compensation term. Jhaver may not, therefore, recover under quantum meruit.

### C. *Promissory Estoppel*

■ Under Texas law, a contract comprising the disputed promise precludes recovery under promissory estoppel.[11] Zapata and Jhaver contracted for Jhaver's services. Jhaver may not, therefore, recover under promissory estoppel.

### D. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

■ Under Texas law, the duty of good faith and fair dealing arises in two circumstances. The parties can create the duty with express contractual language.[12] Or, a special relationship of trust and confidence may exist between the parties.[13] This case presents neither circumstance. The Letters, telexes and other communications demonstrate that Zapata and Jhaver did not create the duty with express language. In addition, a special relationship of trust and confidence between Zapata and Jhaver does not exist.

■ Texas courts classify contractual relationships with imbalanced bargaining power as special.[14] The relationship between Zapata and Jhaver is balanced and thus not special.[15] In addition, Texas courts classify contractual relationships special if the parties require trust and confidence to execute the contract.[16] Fiduciary or formal relationships require trust and confidence.[17] Formal relationships may arise from long standing dealings, personal, social, or domestic, that justify the injured party's reliance.[18]

---

ject of an enforceable contract."); *Truly v. Austin,* 744 S.W.2d 934, 937 (Tex.1988) ("As a general rule, a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials."); *Black Lake Pipe Line Co. v. Union Construction Co.,* 538 S.W.2d 80, 86 (Tex.1976) ("We begin with the premise that the right to recover in *quantum meruit* is based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted.... If a valid express contract covering the subject matter exists there can be no recovery upon a contract implied by law."); *Economy Forms Corp. v. Williams Brothers Construction Co. Inc.,* 754 S.W.2d 451, 458 (Tex.Ct.App.1988) ("As a general rule, a party who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials.").

11. *Barker v. Brown,* 772 S.W.2d 507, 510 (Tex. Ct.App.1989) ("The law is well settled that the doctrine of promissory estoppel is not applicable where there exists a legally valid contract between the parties."); *Kneip v. Unitedbank–Victoria,* 734 S.W.2d 130, 133 (Tex.Ct.App.1987) ("[P]romissory estoppel is ordinarily unavailable where, as here, a written contract between the parties exists which governs the subject matter of the promise."); *Stewart & Stevenson Services Inc. v. Enserve Inc. and CMW Inc.,* 719 S.W.2d 337, 344 (Tex.Ct.App.1986) ("When a legally sufficient contract exists, the theory of promissory estoppel becomes inapplicable.").

12. *Arnold v. National County Mutual Fire Insurance Co.,* 725 S.W.2d 165, 167 (Tex.1987); *Manges v. Guerra,* 673 S.W.2d 180, 183 (Tex.1984); *Lovell v. Western National Life Insurance Co.,* 754 S.W.2d 298, 302 (Tex.Civ.App.1988)

13. *Arnold,* 725 S.W.2d at 167; *English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983); *City of San Antonio v. Forgy,* 769 S.W.2d 293, 296 (Tex.Civ. App.1989); *Lovell,* 754 S.W.2d at 302.; *McClendon v. Ingersoll–Rand Co.,* 757 S.W.2d 816, 819 (Tex.Civ.App.1988).

14. *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 212 (Tex.1988); *Arnold,* 725 S.W.2d at 167; *Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 480 (Tex.Civ.App.1989); *Forgy,* 769 S.W.2d at 296; *Lovell,* 754 S.W.2d at 302.

15. Jhaver's claim does not fall within any of the recognized categories. *Caton v. Leach,* 896 F.2d 939, 948 (5th Cir.1990) (employment relationship recovery denied); *Aranda,* 748 S.W.2d 210, 212 (Tex.1988) (compensation carriers recovery permitted); *Arnold,* 725 S.W.2d at 167 (insurance carrier recovery permitted); *Adolph Coors,* 780 S.W.2d 477, 480 (Tex.Civ.App.1989) (supplier—distributor relationship recovery denied); *Forgy,* 769 S.W.2d at 296 (city and contractor relationship recovery denied); *Lovell,* 754 S.W.2d at 302 (mortagee—mortagor relationship recovery denied).

16. *Forgy,* 769 S.W.2d at 296; *Lovell,* 754 S.W.2d at 303.

17. *Lovell,* 754 S.W.2d at 303.

18. *Id.*

The dealings between Zapata and Jhaver were not long standing. The relationship is not formal. In addition, Texas courts would not classify the relationship as fiduciary.[19] Consequently, a special relationship between Zapata and Jhaver does not exist.

## IV.  CONCLUSION

Jhaver did not establish a breach of the duty of fair dealing and good faith nor a cause of action under quantum meruit or promissory estoppel. The contract between Zapata and Jhaver is, however, ambiguous. A jury must ascertain its terms. We thus REVERSE and REMAND.

---

**19.**  *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex. 1962); *Lovell,* 754 S.W.2d at 303 (Tex.Civ.App. 1988).