Luis Martinez **GUZMAN**, Plaintiff,

v.

**EL PASO NATURAL GAS COMPANY**, Defendant.

**Civ. A. No. SA–88–CA–533.**

United States District Court,
W.D. Texas,
San Antonio Division.

Nov. 16, 1990.

**996**

Thomas A. Spieczny, El Paso, Tex., for plaintiff.

Kenneth R. Carr, El Paso, Tex., for defendant.

### ORDER

PRADO, District Judge.

On this date came on to be considered the Defendant El Paso Natural Gas Co.'s ("EPNG") Motion for Summary Judgment and supporting brief, filed June 18, 1990; the Plaintiff Luis Martinez Guzman's Brief in Opposition to the Motion for Summary Judgment, filed June 29, 1990; Defendant's Reply to Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, filed July 16, 1990; as well as the parties' agreed pretrial order, received August 6, 1990. After careful consideration, the court finds that EPNG's motion for summary judgment should be granted in part and denied in part.

### I. OVERVIEW

Plaintiff, Luis Martinez Guzman, an attorney, began his employment with EPNG on or about June 1, 1975. On or about October 10, 1986, Guzman terminated his employment with EPNG because he believed "he had no realistic opportunity to continue employment with the Defendant" and was therefore constructively discharged. Guzman alleges that he was subjected to protracted harangues and arguments from supervising attorneys who would yell at him and subject him to lengthy verbal assaults; he also claims that he was threatened, denied various perks and privileges afforded to other persons with similar responsibilities, was kept off of various distribution lists and organizational charts, was not afforded comparable secretarial or support staff services, and did not receive comparable office or furniture, and was not included in management functions, because of his race and national origin. Additionally, Guzman insists that he advanced as high as any Hispanic person was allowed to advance at EPNG, and that while he was employed there, EPNG would not allow a Hispanic person to rise to the level of officer or department head. On June 2, 1988, he filed this lawsuit.[1]

On January 8, 1990, this court granted in part and denied in part the Defendant's Motion to Dismiss for Failure to State a Claim, filed July 24, 1989, and indicated that "paragraphs 5A, B, C, and E of plaintiff's complaint contain factual allegations that are no longer actionable under § 1981." Similarly, in light of *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the court dismissed plaintiff's claim that he was denied a severance package generally available to other employees because of his race. However, Guzman's claims under 42 U.S.C. § 1981 regarding a racially motivated failure to promote were specifically allowed to go forward. Plaintiff's Amended Complaint, received April 9, 1990, and the pretrial order indicate that Guzman's

---

1. Because suit was filed on June 2, 1988, EPNG contends, and this court agrees, that the appropriate promotion "window" for Guzman's *Patterson* failure-to-promote claims extends from June 2, 1986 (the applicable two-year limitations date) to October 10, 1986. *See Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir.1988).

causes of action in this case now include: (1) 42 U.S.C. § 1981 failure-to-promote claims;[2] (2) 42 U.S.C. § 1988 (attorney's fees); (3) breach of duty of good faith and fair dealing; (4) intentional misconduct; (5) violations of public policy pursuant to *McClendon v. Ingersoll Rand,* 779 S.W.2d 69 (Tex.1989), *cert. granted,* — U.S. —, 110 S.Ct. 1804, 108 L.Ed.2d 935 (1990); (6) intentional infliction of emotional distress; and (7) breach of contract. Defendant has moved for summary judgment with respect to all of these claims.

## II. STANDARD FOR SUMMARY JUDGMENT

■ The Court must address the standard to be applied in determining whether or not to grant summary judgment. Federal Rule of Civil Procedure 56 provides in pertinent part:

**Motion and Proceedings [on Summary Judgment].** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Defendant, though movant for summary judgment, will not carry the burden of proof at trial as to the issues the Court now faces. Under recent Supreme Court and Fifth Circuit case law regarding summary judgment, the movant need only present or designate evidence which negates or disproves "the existence of any essential element of the opposing party's claim." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). Once movant has made this showing, the non-movant must then respond with a specific factual showing that there is a genuine issue in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1123 (5th Cir.1988).

■ In order to survive a motion for summary judgment, the non-movant must raise a genuine dispute as to a *material* fact. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Genuine disputes over irrelevant, immaterial or unnecessary facts will not render summary judgment inappropriate. *Id.; Williams v. Adams,* 836 F.2d 958, 961 (5th Cir.1988).

## III. FAILURE–TO–PROMOTE CLAIMS

■ Plaintiff's Amended Complaint alleges two promotions that EPNG did not award him in violation of 42 U.S.C. § 1981 as it was interpreted by the Supreme Court in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).[3] After *Patterson,* some, but not

---

2. Plaintiff alleges that shortly prior to his termination of employment, he was passed over and not considered for a promotion that would have resulted in a new and distinct relationship with EPNG. "This promotion was given to Mike Holland, an Anglo–Caucasion person. The position in question involved the Mojave Pipeline Project...." Amended Complaint, at ¶ 5F. Guzman also alleges that shortly before he left EPNG, he was denied consideration for a promotion to Vice President of Gas Purchases, a position that allegedly went to Tom Mulkey, "an Anglo–Caucasian person." Amended Complaint, at ¶ 5G. Guzman indicates the "Defendant continued to hold that position open and continued to look for persons to fill that position up to the Plaintiff's employment and thereafter." *Id.*

3. In his brief in opposition to Defendant's motion for summary judgment, Guzman claims, for the first time in this case, that there was "still a third promotional opportunity" which occurred prior to his resignation. This "promotional opportunity" refers to EPNG's naming Mike Holland to the position of Vice President, Special Services. Plaintiff concedes that this claim was not listed in the Amended Complaint. Brief in Opposition, at 8. Nor is there any mention of this particular failure-to-promote claim in the Agreed Pre–Trial Order. Consequently, Guzman may not go forward with this failure-to-promote claim; he has not sought leave of court to pursue such a claim at this late date and the discovery period in this case has long since expired. *See* Scheduling Order, ¶ 10, filed January 8, 1990 (indicating that requests

all, promotion opportunities are entitled to protection under 42 U.S.C. § 1981. To determine which promotions qualify, the Supreme Court enunciated a "new and distinct relation" test: a § 1981 cause of action exists if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Patterson*, 109 S.Ct. at 2377. *Patterson*, however, furnishes scant guidance on how to identify promotion opportunities that meet the "new and distinct relation" test. As its sole example, the Court cited *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), a Title VII case concerning a law firm's refusal to accept a female associate for partnership.

Subsequently, in *Carter v. South Cent. Bell*, 912 F.2d 832, 839 (5th Cir.1990), the Fifth Circuit reiterated the dictates of *Patterson v. McLean* without establishing a standard for determining whether a failure to promote claim is actionable under § 1981. The appellate court noted that " '[w]hether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter a new contract with the employer.' " *Carter*, 912 F.2d at 839 (citations omitted). Although the court required that the promotion rise to the level of an opportunity for a new and distinct relation between the employee and the employer, it declined to dissect the "new and distinct" relation criterion to test its perimeters. *Carter*, 912 F.2d at 840. The *Carter* panel made reference, however, to *Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir.1989), and the Seventh Circuit's interpretations of the "new and distinct relation" test. *Carter*, 912 F.2d at 840.

In *Malhotra* the Seventh Circuit panel noted three possible interpretations of the "new and distinct relation" test announced in *Patterson*. The first focuses on whether the terms of the contractual relationship between the employee and the employer would change ("the contract test"). *Id.* at 1311. The second focuses on whether an outsider to the firm could fill the position at issue ("the outsider test"). *Id.* The third interpretation focuses on whether the promotion would involve a substantial change in the plaintiff's job duties or responsibilities ("the job requirements test"). *Id.* at 1317 n. 6. The outsider and job requirements tests are broader than the contract test and address a perceived anomaly created by that test. The anomaly arises because, applying the contract test, a stranger to the firm could sue under § 1981 if denied employment on racial grounds. An employee of the firm, however, could not sue for an identically motivated denial of promotion to the same position unless the promotion would have created a new contract between the employee and the employer. The broader outsider and job requirements tests eliminate the anomaly by excluding only "routine" promotions, e.g., changes in civil service pay grades that depend almost solely on longevity, from redress under § 1981. *See id.* at 1311 (discussing the outsider test). All other promotions would remain actionable.

In *Mallory v. Booth Refrig. Supply Co.*, 882 F.2d 908 (4th Cir.1989), the Fourth Circuit assessed whether or not a particular promotion satisfies the "new and distinct relation" test. There, the court held that "promotion from a clerk to a supervisor [in a company's accounting department] with a consequent increase in responsibility and pay satisfies this [*Patterson*] test." *Id.* at 910. Beyond noting that an increase in responsibility and pay were sufficient, the Fourth Circuit did not elaborate on the test's criteria.

■ District courts have also been exploring what constitutes "new and distinct relations" for purposes of an actionable claim under § 1981. Although no bright line test has emerged from these cases,[4]

---

for extension of any of the relevant deadlines must be filed before the expiration of that deadline).

4. The inquiry into what gives rise to a "new and distinct relationship" is clearly fact specific. The developing body of case law has identified several significant changes: changes in pay, in duties and responsibilities, in status from hour-

several courts have proposed factors to guide in this assessment, including, qualifications for the promotion, method of calculating salary, responsibility level, and change in status at the company. *See Williams v. Chase Manhattan Bank, N.A.*, 728 F.Supp. 1004, 1009 (S.D.N.Y. 1990) (promotion from employee to officer of a bank would constitute a "new and distinct relation"); *Green v. Kinney Shoe Corp.*, 728 F.Supp. 768, 777 (D.D.C.1989) (promotion from manager-in-waiting to manager cognizable on finding that method of evaluation, salary, and responsibilities all would change); *Miller v. Shawmut Bank of Boston*, 726 F.Supp. 337, 341–42 (D.Mass.1989) (promotion to personal banker from customer services representative was sufficient to save a § 1981 claim from summary judgment); *Luna v. City and County of Denver*, 718 F.Supp. 854, 856–57 (D.Colo.1989) (promotion from Project Supervisor I to Engineer III cognizable since the promotion involved differences in supervisory responsibility, duties and qualifications). Mere increase in pay, however, has failed to fulfill the *Patterson* guidelines. *See Williams v. National R.R. Passenger Corp.*, 716 F.Supp. 49, 50, n. 1 (D.D. C.1989) (where manager claimed that salary increase was not sufficient, promotion claim barred by *Patterson*).

### A. The Mojave Pipeline Project

EPNG indicates that the first "promotion" described in paragraph 5F of the Amended Complaint, was awarded to Mike Holland in connection with the Mojave Pipeline Project. Defendant's Brief, filed June 18, 1990, at 3. EPNG asserts that "during all relevant time periods, Mojave Pipeline Operating Company was a California Corporation; that its sole stockholder was Mojave Pipeline Company, a Texas General Partnership; and that the equal partners in Mojave Pipeline Company were wholly-owned subsidiaries of El Paso and Enron Corporation...." *Id.* at 3. Defendant further maintains that the selection of Mike Holland as Executive Vice President of Mojave Pipeline Operating Company ("Mojave"), was the decision of Mojave, a separate and distinct corporation, and not EPNG. Arguing that "Mojave and El Paso are separate corporate entities and ... should be treated as such," *id.* at 5, Defendant concludes that "El Paso is not responsible for the Holland appointment awarded him by Mojave—a separate corporate entity only partly owned by El Paso." *Id.* at 7.

▮ An employer may be responsible for the actions of a superficially distinct entity if the evidence shows that the two companies represent a single integrated enterprise, i.e., if they are in fact a "single employer." *Radio Broadcast Technician Local 1264 v. Broadcast Services, Inc.*, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965); *Trevino v. Celanese Corp.*, 701 F.2d 397, 403–404 (5th Cir.1983). Ordinarily, promotion is perceived as occurring within a single company or organization. It is clear, however, that an employee may also be promoted or denied promotion, from one to another nominally independent entity, provided these two entities' activities, operations, ownership, or management are sufficiently interrelated. *Trevino*, 701 F.2d at 403. Factors considered in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Trevino*, 701 F.2d at 404.

▮ Courts applying this four-part standard have usually focused on the second

ly to salaried employee, in required qualifications, in responsibility level, in daily duties, in potential liability, and in pension and other benefits. There are potentially many factors that could arise to influence the determination; for example, change in location, in grade, in department or office, and in use of equipment. The cases that have addressed the issue indicate that the trial court must consider evidence of all change, those identified above and others,

which a promotion will work. It must then exercise reasoned judgment as to whether that change will work a new and distinct relation between the parties. This judgment must consider not only the number of resulting changes, but the magnitude of individual changes, and of the changes as a whole. *See DeBailey v. Lynch–Davidson Motors, Inc.*, 734 F.Supp. 974, 977 (M.D.Fla.1990).

factor; centralized control of labor relations. *Id.* This criterion has been boiled down to an inquiry of "what entity made the final decisions regarding employment matters related to the person claiming discrimination." *Chaiffetz v. Robertson Research Holding, Ltd.,* 798 F.2d 731, 735 (5th Cir.1986). EPNG concedes that it is "a beneficial minority owner of Mojave [with] ... the beneficial right to select a minority of members of Mojave's Board...." Agreed Pre–Trial Order, at 7. Consequently, EPNG, and not Mojave, made the final decision regarding selection of Holland to the Mojave board of directors. Guzman's failure-to-promote claim thus survives EPNG's motion for summary judgment in so far as it alleges a failure of EPNG to promote Guzman to the Mojave board of directors. However, this failure to promote Guzman to the Mojave board of directors must be distinguished from EPNG's alleged failure to promote Guzman to an Executive Vice President position with Mojave.

■ The uncontradicted summary-judgment evidence in this case establishes that the by-laws of Mojave provide that its board of directors shall have the authority to elect its officers. The Mojave board of directors is made up of equal numbers of representatives from two distinct corporate entities, Enron Corp. and EPNG. It is clear that Holland's appointment to Executive Vice President of Mojave on October 1, 1986 was a decision of the board of directors of Mojave. Because Mojave's by-laws require the *equal* representation of Enron and EPNG on its board of directors, an employment decision by the Mojave board of directors cannot be charged to EPNG. In this case, Guzman simply cannot establish, under either *Chaiffetz* or *Trevino,* that it was EPNG's decision to promote Holland rather than himself to an Executive Vice President position with Mojave. Consequently, Plaintiff will not be allowed to pursue a § 1981 failure-to-promote claim which alleges that EPNG failed to promote him to the position of Executive Vice–President of Mojave. However, the § 1981 failure-to-promote claim which alleges that EPNG failed to promote Plain-

tiff to the Mojave board of directors shall go forward, and to this extent the Defendant's motion for summary judgment will be denied.

### B. The Mulkey Promotion

■ EPNG asserts that the other promotion, described in paragraph 5G of the Amended Complaint—Vice President of Marketing for EPNG—was awarded to Tom Mulkey on November 21, 1986, six weeks after the effective date of Plaintiff's resignation from the company. Defendant argues that Guzman "is simply in no position to contend that he should have been promoted to a position filled after his termination date." Defendant's Brief, filed June 18, 1990, at 8. Plaintiff argues, however, that although Mulkey was promoted after his own resignation "he was promoted into a position which was open and vacant during Mr. Guzman's employment." Plaintiff's Brief in Opposition, filed June 29, 1990, at 6. The court finds that there is a genuine issue of material fact with regard to the question of whether or not EPNG had—between June 2, 1986 and October 10, 1986—a Vice President of Marketing position to which it failed to promote the Plaintiff. Therefore, with regard to EPNG's alleged failure to promote Plaintiff to a Vice President of Marketing position between June 2, 1986 and October 10, 1986, the Defendant's motion for summary judgment will be denied.

## IV. BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

Plaintiff alleges that EPNG's actions in this case amount to a breach of good faith and fair dealing under *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210 (Tex.1988). The court disagrees with this assertion and will therefore grant Defendant's motion for summary judgment with respect to this cause of action.

■ Texas courts have refrained from imposing a contractual covenant of good faith and fair dealing in every contract. *Caton v. Leach Corp.,* 896 F.2d 939, 948 (5th Cir.1990); *English v. Fischer,* 660

S.W.2d 521, 522 (Tex.1983) (court refused to adopt implied contractual covenant of good faith that neither party will do anything which injures the right of the other party to receive the benefits of the agreement); *see also Arnold v. National County Mutual Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). Rather, the Texas Supreme Court has recognized a tort duty of good faith and fair dealing, but has limited its application to distinct situations. *See Aranda*, 748 S.W.2d at 212–13 (special relationship exists between workers' compensation carrier and claimant upon which to impose tort duty of good faith).

■ The Texas courts have injected the tort duty of good faith in discrete, special relationships, earmarked by specific characteristics including: long standing relations, an imbalance of bargaining power, and significant trust and confidence shared by the parties. *Caton*, 896 F.2d at 948; *Aranda*, 748 S.W.2d at 212–13 (compensation carrier occupies position of control over dependent employee who places trust in carrier); *Arnold*, 725 S.W.2d at 167 (special relationship between insurer and insured is based on unequal bargaining power and insurer's position of control). The Texas appellate courts, as yet, have not found the employment relationship to present an adequate basis upon which to impose the duty of good faith. *See Caton*, 896 F.2d at 948.

In *McClendon v. Ingersoll–Rand Co.*, 757 S.W.2d 816, 819 (Tex.App.—Houston [14th Dist.] 1988), *rev'd on other grounds*, 779 S.W.2d 69, 71 (Tex.1989), the intermediate appellate court rejected an at-will employee's wrongful discharge claim and held that the employer-employee relationship was not special enough to justify the imposition of a duty of good faith and fair dealing. The Texas Supreme Court reversed the appellate court on other grounds and held that an at-will employee

states a cause of action for wrongful discharge where the "principal reason for [the] termination was the employer's desire to avoid contributing to or paying [pension] benefits." *McClendon*, 779 S.W.2d at 71. The court declined to address the issue urged by the employee, whether the employment relationship justifies recognition of the tort duty of good faith. *See McClendon*, 779 S.W.2d at 69–70 n. 1. At present the Texas courts do not recognize the employment relationship as warranting the tort duty of good faith.[5]

■ The applicable precedents thus indicate that Guzman's relationship with EPNG as one of its corporate attorneys cannot justify imposing tort duties that do not yet attend the employment relationship. The parties did not create a duty of good faith and fair dealing with express contractual language, nor does a special relationship of trust and confidence exist between the parties that would justify a duty of good faith and fair dealing on the facts of this case. *See Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 385 (5th Cir.1990). Accordingly, the Defendant's motion for summary judgment with respect to Guzman's claim for breach of the duty of good faith and fair dealing shall be granted.

## V. INTENTIONAL MISCONDUCT

■ Plaintiff also alleges a claim against EPNG for "intentional misconduct," an independent cause of action that Guzman insists was recognized by the Texas Supreme Court in *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex.1988). EPNG argues, however, that "to the extent that Plaintiff is urging 'intentional misconduct' as a separate tort, it is a cause of action not found in Texas jurisprudence." Defendant's Brief, filed June 18, 1990, at 12. The court agrees with this statement. Despite Plaintiff's

---

5. *Caton*, 896 F.2d 949; *McClendon*, 757 S.W.2d at 819–20, *rev'd on other grounds*, 779 S.W.2d 69 (Tex.1989); *see also McClendon*, 779 S.W.2d at 71, 74 (Cook, J., dissenting) (Chief Justice Phillips and Justice Hecht joined Justice Cook); *id.* at 75 (Gonzalez, J., dissenting) (states that court refused to extend tort duty of good faith to employment at will); *cf. Bowser v. McDonalds*

*Corp.*, 714 F.Supp. 839, 842 (S.D.Tex.1989) (court found that employment relationship did not constitute special relationship under Texas law); *Lovell v. Western Nat. Life Ins. Co.*, 754 S.W.2d 298, 303 (Tex.App.—Amarillo 1988, writ denied) (no special relationship existed between mortgagee and mortgagor).

protests to the contrary, the Texas Supreme Court did not recognize a wide-ranging and undefined tort of "intentional misconduct" in *Aranda*. The court simply held that "compensation carriers are subject to a duty of good faith and fair dealing in the processing of compensation claims" and recognized that "[a] worker's claim against the carrier for the breach of the duty of good faith and fair dealing or *intentional misconduct in the processing of claims* is not precluded by the exclusivity provisions of the Workers' Compensation Act." *Aranda*, 748 S.W.2d at 215 (emphasis supplied). Consequently, the Defendant's motion for summary judgment with respect to Guzman's claim for intentional misconduct under *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex.1988) shall be granted.

## VI. VIOLATIONS OF PUBLIC POLICY

■ Plaintiff also alleges a pendent cause of action based on violations of public policy recognized by *McClendon v. Ingersoll Rand*, 779 S.W.2d 69 (Tex.1989), *cert. granted*, — U.S. —, 110 S.Ct. 1804, 108 L.Ed.2d 935 (1990). The court agrees with the Defendant that Plaintiff cannot maintain such a cause of action under the facts of this case. Texas recognizes only two public policy exceptions to the employment-at-will doctrine. These exceptions are set out in *McClendon*, 779 S.W.2d at 70–71 (discussing public policy exception recognized for termination due to employer's desire to avoid payment of pension benefits) and *Sabine Pilot Serv. Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985) (public policy exception created where employee was discharged for refusing to perform a criminal illegal act ordered by an employer). Guzman has not asserted any facts that implicate *Hauck*, nor has he sought to come within *McClendon*. No case in Texas jurisprudence goes beyond these exceptions, and no Texas case has recognized a tort of "violation of public policy." For these reasons, the Defendant's motion for summary judgment with respect to Guzman's Texas

tort claim for violations of public policy shall be granted.

## VII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To prevail on a claim for intentional infliction of emotional distress, Texas law requires that the following four elements be satisfied: "(1) the defendant acted intentionally or recklessly, (2) the conduct was 'extreme and outrageous', (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe." *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir.1989); *Tidelands Auto Club v. Walters*, 699 S.W.2d 939, 942 (Tex. App.—Beaumont, 1985, writ ref'd, n.r.e.).

Conduct is "outrageous" if it surpasses "all bounds of decency," such that it is "utterly intolerable in a civilized community." Restatement (Second) Torts Section 46, Comment d; *Dean*, 885 F.2d at 306.

> Liability [for outrageous conduct] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.... Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous."

■ Although Texas law recognizes the independent tort of intentional infliction of emotional distress,[6] it is for the court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. In the case *sub judice* the facts as alleged and shown by Plaintiff reveal a genuine issue of material fact with regard to this question. The Plaintiff does more than assert that EPNG simply failed to promote him because of his race. Guzman also alleges that he was subjected to protracted harangues and verbal assaults from supervising attorneys; that he was

---

**6.** *See Laird v. Texas Commerce Bank–Odessa*, 707 F.Supp. 938, 941–42 (W.D.Tex.1988); *Abston*

*v. Levi Strauss & Co.*, 684 F.Supp. 152, 157 (E.D.Tex.1987).

threatened, denied various perks, and privileges afforded to other persons with similar responsibilities; that he was kept off of various distribution lists and organizational charts; that he was not afforded comparable secretarial or support staff services; that he did not receive comparable office or furniture; and that he was not included in management functions, all on account of his race and national origin. With these allegations as the relevant backdrop, the court finds that the summary-judgment evidence in this case creates a genuine issue of material fact with regard to whether or not Guzman was subjected to an intentional infliction of emotional distress. Consequently, Defendant's motion for summary judgment with respect to Guzman's claim for intentional infliction of emotional distress shall be denied.

## VIII. BREACH OF CONTRACT (ERISA)

Plaintiff also asserts a claim for breach of contract and failure to provide severance pay. Defendant argues that Plaintiff's claims regarding EPNG's severance pay plan, which generally provides for a four percent (4%) severance benefit if an employee's job is abolished (see paragraph 6 of the Amended Complaint), are preempted by the Employment Retirement Income Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). Guzman responds that even if his breach of contract claims are preempted, "[t]he appropriate course would be to have these claims litigated under ERISA."

ERISA was enacted to protect the participants and beneficiaries of employee benefit plans. 29 U.S.C. § 1001(b). Section 1132(a)(1)(B) states that a civil action may be brought by a plan beneficiary "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 1132(e) gives federal district courts jurisdiction over such actions. The Supreme Court has held that ERISA preempts state common law claims involving the processing of employee benefits. *See Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 56–57, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987).

ERISA applies to any employee benefit plan if it is established or maintained by an employer or an employee organization engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 240 (5th Cir.1990). ERISA regulates two distinct types of benefit programs that may be offered to employees: pension plans and welfare plans. *Id.* Section 3(1) of ERISA, the definitional section, includes among "employee welfare benefit plans" any plan established by an employer that provides benefits in the event of unemployment. *See* 29 U.S.C. § 1002(1). Although the Fifth Circuit has not spoken directly to this issue, many federal courts have specifically recognized that an employer's provisions for severance pay are "employee welfare benefit plans" under ERISA. *See, e.g., Wickman v. Northwestern Nat. Ins. Co.,* 908 F.2d 1077, 1082 (1st Cir.1990); *Wallace v. Firestone Tire & Rubber Co.,* 882 F.2d 1327, 1329 (8th Cir.1989); *Pane v. RCA Corp.,* 868 F.2d 631, 635 (3rd Cir.1989).

 Since El Paso's severance pay plan has as its purpose the providing of financial assistance to employees whose jobs are abolished, it is clearly an employee welfare benefit plan within the meaning of ERISA. *See Holland v. Burlington Indus. Inc.,* 772 F.2d 1140, 1146 (4th Cir. 1985), *aff'd sub nom., Brooks v. Burlington Indus. Inc.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986). Guzman's claim for breach of contract to provide severance pay therefore falls under ERISA, "which provides an exclusive federal cause of action for the resolution of such claims." *Degan v. Ford Motor Co.,* 869 F.2d 889, 894 (5th Cir.1989). Consequently, this claim is not actionable as a state-law contract claim, for ERISA acts to "recharacterize such claims into actions arising under federal law." *Id.* Despite the Defendant's protests to the contrary, Plaintiff will be allowed to substitute an ERISA theory for his preempted state-law breach of contract claim. No prejudice can result from allowing Guzman to proceed with a claim Defendant has anticipated for

**1004**

months. *See Sandoval v. Simmons,* 622 F.Supp. 1174, 1210 (C.D.Ill.1985) (amendment of pleadings to allege violations of ERISA would not be permitted where such claim *was first asserted during trial* and allowance of amendments would have prejudiced defendant) (emphasis supplied). Accordingly, Defendant's motion for summary judgment with respect to Guzman's ERISA claim shall be denied.

Therefore, it is hereby ORDERED that Defendant's motion for summary judgment is GRANTED such that Plaintiff will not be allowed to pursue a § 1981 failure-to-promote claim which alleges that EPNG failed to promote him to the position of Executive Vice–President of Mojave. However, the § 1981 failure-to-promote claim which alleges that EPNG failed to promote Plaintiff to the Mojave board of directors shall go forward, and to this extent the Defendant's motion for summary judgment is DENIED;

It is FURTHER ORDERED that with regard to EPNG's alleged failure to promote Plaintiff to a Vice President of Marketing position between June 2, 1986 and October 10, 1986, the Defendant's motion for summary judgment is DENIED;

It is FURTHER ORDERED that the Defendant's motion for summary judgment with respect to Guzman's claim for breach of the duty of good faith and fair dealing is GRANTED;

It is FURTHER ORDERED that the Defendant's motion for summary judgment with respect to Guzman's claim for intentional misconduct is GRANTED;

It is FURTHER ORDERED that the Defendant's motion for summary judgment with respect to Guzman's Texas tort claim for violations of public policy is GRANTED;

It is FURTHER ORDERED that Defendant's motion for summary judgment with respect to Guzman's claim for intentional infliction of emotional distress is DENIED.

It is FINALLY ORDERED that Defendant's motion for summary judgment with

respect to Guzman's ERISA claim is DENIED.