## PROCEDURE WHERE CHARGES OF WRONGDOING ARE MADE AGAINST AN OFFICER ELECT.

Court of Appeals for Jefferson County.

THE STATE OF OHIO, ON RELATION OF JOHN G. BELKNAP, v. THE BOARD OF DEPUTY STATE SUPERVISORS OF ELECTIONS AND CHARLES H. GRAVES, SECRETARY OF STATE.

Decided, May Term, 1914.

*Office and Officer—Construction of the Corrupt Practice Act—Board of Deputy State Supervisors of Elections Can Not Assume Judicial Prerogatives—Not Authorized to Refuse a Certificate of Election, When—Mandamus Against Board to Compel Issuance of Certificate—Secretary of State May Be Joined in such an Action, When—Sections 5175-2-3.*

1. When the person elected to the office of probate judge has filed itemized statements purporting to contain a full statement of all the money or other things of value promised, received or expended, and the liabilities incurred in connection with such election, and the primary election therefor, in substantial compliance with Sections 2 and 3 of the act known as the corrupt practice act (Section 5175-2 and 3, General Code) the board of deputy state supervisors of elections are not authorized under Section 8 of this act to refuse a certificate of election to such person on the grounds that the board believes the statements filed are false and incomplete.

2. In mandamus proceedings by the person elected to the office of probate judge begun in the county in which the election was held

against the board of deputy state supervisors of elections to compel the issuing of a certificate of election to him, the Secretary of State may be joined with said board as a party defendant, where the Secretary of State under color of his office has assumed the right to direct said board to refuse the certificate, and where the certificate has been refused by reason of such direction.

3. In the trial of such mandamus proceedings the defendants can not introduce evidence tending to prove that such statements are either false or incomplete.

*A. C. Lewis* and *J. O. Naylor,* for plaintiff.

*Timothy S. Hogan,* Attorney-General, *James I. Boulger* and *M. N. Duvall,* contra.

POLLOCK, J.; METCALFE, J., and NORRIS, J., concur.

This is an action in mandamus and comes into this court on appeal. The relator, John G. Belknap, says that at the general election for state and county officers, held on the 5th day of November, 1912, he was elected to the office of probate judge of Jefferson county, Ohio, having received a plurality of the votes cast for candidates for that office at this election; that the defendant, the board of deputy state supervisors of elections, afterwards refused to issue to him a certificate of election; that this refusal was by the direction and request of the defendant, the Secretary of State of the state of Ohio. He asks that a writ of mandamus be ordered issued requiring said board to issue a certificate to him of his election, and requiring the Secretary of State to issue to him his commission.

An issue was joined by separate answers of the board and of the Secretary of State, denying that the accounts filed by the relator of his expenditures at the primaries and election complied with the statute, and that they contained all the expenditures made by relator at either the primaries or election.

The case was heard upon a transcript of the evidence and evidence offered by the defendants in the court of common pleas, which was agreed to be received as the evidence, and evidence offered in the trial in this court.

The evidence in this case proved that at the general election held on the 5th day of November, 1912, the relator, John G.

Belknap, received the highest number of votes of any candidate for the office of probate judge of Jefferson county, Ohio; that the returns were duly opened by the board of deputy state supervisors of elections, and an abstract of the votes cast made by this board and signed by the board and clerk, and a duplicate copy thereof forwarded to the Secretary of State; that afterwards the relator tendered to this board five dollars, the fee required by statute, and demanded that this fee, together with a certificate of his election, be forwarded to the Secretary of State at Columbus.   This was refused by that board.

It is further proven that after the election the Secretary of State directed this board that they should refuse to issue a certificate of election to relator, and it was in obedience to his direction that the board of deputy state supervisors refused the certificate to relator.

The testimony further shows that on the 21st day of May, 1912, the relator filed with the board of deputy state supervisors of elections, properly qualified, what purported to be an itemized statement of his receipts and expenditures as a candidate for the nomination to this office at the primary election held in that year, and that on November 6th, 1912, he filed a like statement, properly qualified, of his receipts and expenditures as a candidate for election to the office of probate judge. The relator then rested his case.

The defendants then called as a witness Daniel Coll, who was asked whether he received anything of value from any candidate for office at either the primary or the general election in the year 1912.

Plaintiff objected, and the objection being sustained, was excepted to by the defendants.   The defendants then stated that they expected to prove by this witness that at the May primary, 1912, the relator promised to give the witness a shotgun and case if he would agree to use his influence for relator at that primary, and afterwards, and before the election in November, did give him a shotgun and case for his influence at the primary election and at the general election.

The defendants also called a number of other witnesses, stating that they expected these witnesses to testify to the receipt of different sums of money from the relator for their influence in his favor as a candidate for this office, and which were not accounted for in his itemized statement. This testimony was objected to by the plaintiff, the objection sustained and exception noted. Defendants then rested.

The only issue to be determined in this action is the right of respondents to refuse to issue a certificate of election to relator for the reason that they claim the accounts of his expenditures which he filed were not complete, as required by what is commonly known as the "Kimble Corrupt Practice Act" (Section 5175-1 and following of General Code), and that the account which he did file of his expenditures was not true, and that he violated the provisions of that act in his expenditures.

This brings us to a consideration of the question, under what circumstances does the board of deputy state supervisors of elections, either on their own motion or by the direction of the Secretary of State, have a right to refuse to issue to the successful candidate at an election a certificate of his election?

Sections 2 and 3 of this act provide that every candidate who is voted for at any election or primary election, shall within ten days after such election file an itemized statement showing in detail all the moneys or things of value contributed, promised, received and expended, and all liabilities directly or indirectly incurred in connection with such election, and that this statement shall contain the full name and address of the candidate, the specific nature of such item, the purpose for which, the place where, and the date when it was contributed, promised, received, expended or incurred.

Section 7 provides that the Secretary of State shall prepare a form of the statement required by this act, and shall furnish the same to the board of ·deputy state supervisors of elections for each county, and, upon application, to any candidate.

Section 8 provides that no board or officer authorized by law to issue commissions or certificates of election shall issue a commission or certificate of election to any person required

by this act to file a statement or statements until such statement or statements have been so made, verified and filed by such person, as provided by this act. No person required by this act to file a statement or statements shall enter upon the duties of any office to which he may have been elected until he has filed all statements provided for by this act, nor shall he receive any salary or emoluments prior to the filing of the same.

Section 13 provides that any person who violates any of the provisions of this act shall be held guilty of a corrupt practice, and shall be punished as hereinafter provided.

Section 14 then provides that where any person required to file such a statement has failed to do so, or has filed a false or incomplete statement or account, that upon petition being filed with the court of common pleas, or a judge thereof, the probate court, court of insolvency or superior court, the question of the failure to file an account, or its falsity or incompleteness, shall be investigated.

This petition can be filed by the Attorney-General of the state, or by the prosecuting attorney of the county, or by five residents and qualified voters who voted at such an election. If filed by the qualified voters they shall give bond to secure the costs, but this bond is not required of either the Attorney-General or the prosecuting attorney. Notice shall then be given to the person named in the petition to appear and show cause within ten days. This investigation shall take precedence over all other business in the court, and provides for a speedy hearing and determination of the question.

Section 21 of this act provides that if the person required to file this statement has failed to file such statement or account, or has filed a false or incomplete statement or account, the court or judge hearing the petition shall require him to file a correct one within ten days, and if such failure to file the account, or the filing of a false and incomplete account, was a wilful intent to defeat the provisions of this act, the court or judge shall forthwith transmit a copy of his decision and of the evidence to the prosecuting attorney of the county, with directions to such prosecuting attorney to present the same to the next grand jury of the county.

Section 32 provides that any person convicted of a corrupt
practice under this act shall be fined or imprisoned in the
county jail, or both, and if he shall have been elected to, office,
shall in addition thereto, forfeit such office.   The petition men-
tioned in Section 14 shall be filed within forty days after the
election, if the statement was filed within the ten days required.

Section 34 provides that all of the prosecutions under this
act shall be commenced within one year after the commission
of the act complained of.

Respondents claim that under Section 8 they are authorized
to withhold a certificate of election from the relator for the
reason that while he filed the accounts required by this act,
yet they were not complete and they did not contain all of the
expenditures made by the relator, and that he violated the
provisions of this act in making expenditures.

The accounts as filed were on the forms prepared by the
Secretary of State.   The statements contained the full name
and address of the relator, and are properly qualified to by
him.   An examination of the accounts will show that some of
the expenditures are not properly itemized, and the purpose for
which, and the persons to whom they were made, are not fully
stated.

The question then arises whether the board of deputy state
supervisors of elections are authorized to pass upon the state-
ments where they are on their face regular and substantially
complete, and refuse a certificate of election on the ground that
in their judgment they do not fully comply with the statute, or
on the ground that the successful candidate made other ex-
penditures not included in his statements in violation of this
act.

It will be noticed that a board or officer can only refuse to
issue a certificate of election or commission until such state-
ment or statements have been made, verified and filed by such
person, as provided by this act.   There is nothing in this act
which authorizes a board or officer whose duty it is to issue a
certificate or commission of election, to refuse because the state-
ment filed is not a complete statement, or that it does not include

all expenditures made by the candidate. All that such board or officer has to do is to determine whether such a statement has been filed or not. The duty of determining whether such a statement is either incomplete or false devolves upon the court before whom a petition is filed, charging that a candidate has not complied with the provisions of this act in either of these regards.

It was held in *State* v. *Tanzey*, 49 Ohio St., 656, that:

''The duties of the board of deputy supervisors of elections, in making the abstracts of the votes returned by the officers of the election precincts of the county, are purely ministerial, and are limited to compiling the votes shown by the tally sheets so returned, and setting down to each candidate the aggregate number of votes so appearing to have been cast for him, and to certifying and transmitting the abstract so made, to the proper officer.''

The only change in the duties of the board in regard to returns of election, and returns of election made by Section 8 of this act, is that it shall not issue a certificate of election until the statements required by the act have been made, verified and filed. If the statements have been filed, the duties of a board or officer end, and the certificate should issue. The board can not assume the judicial prerogative of determining that the person receiving the plurality of the votes cast at the election has violated the corrupt practice act, and for that reason refuse to discharge their plain statutory duty.

The act leaves to the court or judge before whom charges have been made, the authority to determine whether the statements are either incomplete or false. The act then provides for a speedy hearing of the petition, and if the court finds that the statements were not filed, or if filed, not correct or complete, he shall then be required to file statements or corrected ones. If the court or judge finds that he wilfully failed to file a statement, or wilfully filed a false or incomplete statement, then the attention of the grand jury shall be called to the matter, and, if indicted and afterwards convicted before a jury, he shall in addition to the other punishment forfeit the office. This forfeiture does not depend upon the will of any board or

officer, or the judgment of any court. It is only after he has been convicted by a jury of a criminal violation of this act that a person elected to an office shall forfeit the office.

If charges of wrongdoing are made against the successful candidate, this act provides an easy and speedy way for the determination of his right to receive the office to which he was elected, and only when a jury has convicted him of violating one or more of the provisions of this act, shall he be deprived of the office to which the voters have elected him.

"Where a statute creates a new offense by prohibiting and making unlawful anything which was lawful before, and providing a specific remedy against such new offense (not antecedently unlawful) by a particular sanction and method of procedure, that method of procedure and none other must be preserved." *Commissioners* v. *Bank,* 32 Ohio St., 194.

The same principle has been announced by the Supreme Court in the following cases: *State, ex rel,* v. *Marlowe,* 15 Ohio St., 114; *Commissioners* v. *Ziegelhofer,* 38 Ohio St., 528; *State, ex rel,* v. *Dairy Co.,* 62 Ohio St., 124; *State, ex rel,* v. *Ganson,* 58 Ohio St., 313.

This statute prohibits and makes unlawful acts which were lawful before its enactment, and the act itself specifically points out a method of procedure and a remedy or punishment which we think is exclusive.

It is claimed that the question involved in this case has been determined against the relator in the case of the State of Ohio on the relation of William C. Brown, against these same defendants, which was an action for writ of mandamus filed in the Supreme Court. If the Supreme Court has determined this question it is our duty and we will willingly follow their decision.

The petition of the relator in that action made substantially the same allegations as the relator in this action does, and in addition thereto he alleges that he had been indicted by the grand jury of Jefferson county for the violation of this corrupt practice act, and that he had never been tried or convicted on said indictment, and that said indictment was still

pending in the Court of Common Pleas of Jefferson County, Ohio.

The respondents, by their answer, denied that the relator had within the time provided by law, or at any other time, filed the itemized statements required of him as a candidate at the primary election, or the itemized statement required of him as a candidate at the November election; they denied that the relator had done all and singular the things required of him by law to entitle him to the issuing of a certificate of election.

To this answer there was a general demurrer filed by the relator. This demurrer was overruled by the Supreme Court without any report, and this is the decision of the Supreme Court which it is claimed we should follow in determining the question before us.

It is a rule of procedure that for the purpose of a demurrer all of the allegations of a pleading, against which it is filed, which are well pleaded, are admitted to be true. This rule is too well known to attorneys to require any citations of authorities. The answer filed in the Brown case, as above stated, specifically denied that the relator had filed the statement required by this act, and specifically denied that the relator had done all and singular all the things required of him by law to entitle him to his certificate. The answer, after these denials, made some statements admitting that statements had been filed which were not correct or true; but in passing upon the demurrer the court would accept the denials as statements of facts submitted. These denials were good grounds for overruling the demurrer.

And, again a demurrer searches the record, and the court in determining this demurrer would look to the relator's petition as well as to the answer, and in his petition he admitted that he had been indicted by the grand jury of his county, and that the case was yet pending. This was an admission that the procedure provided for by this act had been put in motion, and was then pending undisposed of.

The writ of mandamus is only granted in the exercise of a sound judicial discretion, and the court might well refuse to

sustain this demurrer while an indictment was pending against the relator, which, if upon trial he was convicted, would forfeit his right to the office.

In the case before us no action is pending against this relator provided by this act, and the time for bringing any such action has long since passed. For these reasons we think that the decision of the Supreme Court in the case referred to should not control us in the determination of this question.

That the choice of the electors as expressed by their ballots should not be tainted with fraud and corruption is of the utmost importance to the electors and to the state, and such laws as the one we are now considering, enacted for the purpose of enforcing the purity of the ballot, are wise and should be rigidly enforced; but it is of equal importance, both to the electors and to the person elected, that the person rightfully elected by the people should be permitted to perform the duties of the office when he has been legally elected.

The Legislature in enacting the provisions under consideration, wisely provided a speedy and efficient means of determining the right of a person elected to an office, who may be charged with improper conduct in securing his election. It will not do to brush aside the proceedings provided by this act for a forfeiture of the office as mere technicalities not controlling on the courts, and proceed as a court of equity to deprive the party elected by the electors of his office.

The defendant, Charles H. Graves, as Secretary of State, interposes a further defense that the cause of action alleged against him did not arise in Jefferson county, and that no cause of action in which he is properly joined is rightfully brought in said county. This was not urged before us, but we find it made in the pleadings and will refer to it briefly.

Section 11255 provides that any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to the complete determination or settlement of the question involved herein.

The real question involved in this case is the determination of whether or not the relator is entitled to this office. The issuing of the certificate of election or commission is only the

legal document conferring upon him the right to enter upon the office to which he has been elected; the ultimate object is the office, and the Secretary of State is a necessary party in conferring upon him the right to take possession of that office. He should not be required by legal action to first compel the board of deputy state supervisors of elections to issue to him a certificate, and then further prosecute another action in order to secure his commission.

"In proceedings for a writ of mandamus to compel the levy of a tax by a town to pay a judgment all the officers whose action is necessary to the levy of such tax may be properly joined as defendants, although some of them may not have refused to act." *McKie* v. *Rose,* 140 Fed. Rep., 145.

And again, it was held in *Marion* v. *Coler,* 75 Federal Reporter, page 352:

"Where a plaintiff has shown himself entitled to a mandamus to compel the levy and collection of taxes by a county to pay a judgment against it, he is entitled to one which will set in motion all the necessary machinery, including the action of the assessor and collector, required to be taken after the levy of the tax by the county court, although no demand has been made upon such officers to perform the act so required."

The Secretary of State assumed, by virtue of the authority of his office, to control the action of the board of deputy state supervisors of elections, and the certificate was refused and is refused because of his directions and instructions to the board.

Section 11271 of the General Code provides:

"Actions for the following causes must be brought in the county where the cause of action or part thereof arose.   *   *   *
"2.   Against a public officer, for acts done by him in virtue or under color of his office, or for neglect of his official duty."

The Secretary of State assumed the right to control the actions of the board, and because of his action in this regard the relator would have a right to join him as defendant with the board, in order to complete the determination of this action.

For these reasons we think the defendants can not introduce evidence offered by them, and that the writ should issue. Exceptions will be noted.