BAUMGARD *v.* BOWMAN, TRUSTEE, ET AL.

(Decided November 8, 1928.)

Mr. *A. A. Schramm,* for plaintiff.

Mr. *A. A. Schramm* and Mr. *C. C. Sedgwick,* for trustee.

Mr. *Charles D. Fogle* and Mr. *D. W. Jones,* for Beardsmore.

MAUCK, J. Edward V. Baumgard, by a creditor's bill, pleaded that he had recovered judgments against the American Indian Oil Company, and asked that the property of that company be sold and the proceeds distributed among the lienholders. Thereafter R. L. Bowman, as trustee, filed a cross-petition, setting up a mortgage held by him as trustee on the property of the American Indian Oil Company, and asked foreclosure of that mortgage. Later B. H. Beardsmore came into the case, and, by way of cross-petition, pleaded that Bowman, as trustee, under his mortgage deed, with the consent of the mortgagor, took control and management of the mortgaged property, and controlled the same and operated it as a going gas-producing concern, hired workmen to assist him, received the proceeds resulting from the operation, and in effect acted as receiver of the debtor corporation, and alleged further that he (Beardsmore) worked for Bowman, acting as such trustee, and that his work was necessary to keep the concern going, and that his work and expenses amounted to over a thousand dollars.

By a second cause of action he pleaded that Bowman, as trustee, received from the operation of the property large sums, and has in his hands a large sum derived from said operation which should be applied to the cross-petitioner's claim. Issue was joined between Beardsmore and Bowman on this cross-petition, and from the decree of the common pleas court an appeal has been taken to this court.

It would not be helpful to go at length into the complicated pleadings or to detail the evidence offered in support thereof. Beardsmore's claim depends upon the relation that Bowman, as trustee, bore to Beardsmore and the other parties in interest. It is claimed by Bowman, and was so found by the common pleas, that the lien held by him upon the property of the oil company was a simple mortgage. It is claimed by Beardsmore that that instrument was not a simple mortgage, but was a trust deed, and that a trustee under a trust deed holds for the benefit of all of the parties, that he must protect the property for the benefit of all parties, carry on as trustee for every one who has an interest in the property, and account as a trustee to all.

The difference between a mortgage and a trust deed is clear enough. 3 Jones on Mortgages (8th Ed.), Section 2292; 2 Perry on Trusts (6th Ed.), Section 749. A trustee under a trust deed has duties not at all comparable to those of a simple mortgagee. We do not find, however, that the instrument in question here was anything but a simple mortgage. The confusion appears to have arisen from the fact that Bowman, as a mortgagee, was a trustee, but the fact that he was a trustee, as well as a mortgagee, does not alter the essential character of the

mortgage deed. Bowman was a trustee, not for the mortgagor, nor for any one claiming under the mortgagor, but a simple and express trustee for the different note holders, and as such trustee he owed no duty to the mortgagor or the mortgagor's creditors. So far as the mortgagor was concerned, he could receive from the latter payments due under the mortgage, as any other mortgagee might do, and, after he had received such payments, the trust relation arose as between himself and those who had some interest in the notes secured by the mortgage. His only *cestui que trust* was a holder of mortgage notes. Certainly the mortgage deed created no obligation on the part of Bowman to the oil company or to any one working for it. We are bound, therefore, to consider the relations between Beardsmore and Bowman as relations between two private individuals, unaffected by any trust arrangement, so far as such relations were fixed by the execution and acceptance of the mortgage.

While under the mortgage, therefore, we find Bowman to have been a simple mortgagee holding the mortgage as security for the payment of the papers secured by it, an entire change in the relation of the parties was effected June 4, 1925. It appears that in April, 1925, dissension arose among the stockholders of the mortgagor corporation, and about that time a different group came into control of the corporation. Some of those who were at that time ousted from control were personal indorsers on the notes secured by the mortgage to Bowman, as trustee, and these indorsers were not satisfied with the way that the new officers were managing

the corporate affairs. The mortgaged property consisted largely of leaseholds, upon which gas was being produced and sold to the Ohio Fuel Gas Company. That was the only source of income that the corporation had, at least in Ohio, and these operating leaseholds constituted the only property of value it had in this state. On June 4, 1925, by the procurement of the indorsers of the note, the corporation executed an order on the Ohio Fuel Gas Company and directed that company to pay to Bowman, as trustee, all the money then and thereafter coming due by reason of the gas production on the mortgaged leaseholds. Bowman, as mortgagee, accepted this order and proceeded to realize upon it; in six months collecting something like $11,000, and large sums thereafter. While theretofore the relations between the debtor corporation and Bowman had been that of simple mortgagor and mortgagee, they were entirely changed by this new arrangement, for by this arrangement Bowman, the mortgagee, was placed in full possession of everything of value belonging to the debtor corporation. He was not then a simple mortgagee, but was a mortgagee in possession, and a mortgagee in possession becomes a trustee for the mortgagor and those claiming under the mortgagor. 19 Ruling Case Law, 326; 41 Corpus Juris, 615.

The duties of a mortgagee in possession of the mortgaged property require him to handle his trust estate, that is the mortgaged property, in a provident manner, applying the net proceeds of his operation to the debts in the order of their priority, and, when his own debt is paid to restore the trust estate to the mortgagor. When Bowman took over the mortgaged property in the instant case, he was re-

quired to keep the gas wells in operation, for that was the only source of income that the property had. To do this he had to pay rentals to the owners of the fee according to the terms of the several leases; otherwise the whole estate would be lost. He was required to pump the wells, where pumping was necessary, and to furnish the labor and supplies necessary to the procurement of gas. Whether all these things were in the minds of the parties when the order was given Bowman on the Ohio Fuel Gas Company is not clear. If these things were not expressed, they were nevertheless necessarily implied.

In *Wadleigh* v. *Phelps,* 149 Cal., 627, 87 P., 93, the Supreme Court of California was considering the case of a mortgagee in possession of a mining operation, and in that case, when the mortgagee was placed in possession, his duties were provided for by agreement. The court said, however:

"There was no trust shown by either complaint or evidence, except in so far as there is always a trust relation between a mortgagor and a mortgagee in possession. The duties imposed upon Phelps by the agreement alleged and found were only such as are incumbent upon a mortgagee in possession. It was left optional with him to work the mine or not, and to make leases of portions thereof or not, as he saw fit, and under the law, independent of agreement, he was bound to pay from the rents and profits the expenses of such operations, and apply any net profits in the manner specified."

Bowman, as mortgagee in possession, after June 4, 1925, was consequently bound to operate these gas wells for the benefit of all the parties in interest, and, had he failed in the performance of that duty, would have been personally liable to all those injured by his dereliction. Being bound to so operate

the property, he was bound to pay the expenses of operation, and, it appearing that Beardsmore's services were necessary for the operation, he was holden to Beardsmore for the value of the latter's services from June 4, 1925, the day he became mortgagee in possession. It follows that Bowman, as mortgagee in possession, should have paid from the money received from the gas company in the process of operation, all the expenses incident thereto. This he did not do. On the contrary, he retained the funds and applied the same to the notes secured by the mortgage. In this case he seeks out of the proceeds of sale of the mortgaged property to take all such proceeds in further satisfaction of those notes. He is in equity. It is within the power of a court of equity to compel him to do equity as a condition precedent to an award of equity to him. He might well be required to equitably disburse the funds received by him from the sale of gas from this property before he is permitted to foreclose his mortgage or participate in the fruits of the foreclosure sale. The expedient way is not to require the refund of the money already realized by the note holders, but to order Beardsmore paid out of the funds now in the hands of the court. This we so order. Beardsmore, when working for the mortgagor, received $70 per month. His services to the mortgagee in possession were worth as much. For his services he will be ordered paid, in preference to the mortgagee, at the rate of $70 per month from June 4, 1925, with interest from the date of filing his cross-petition, and his costs herein, subject to whatever amounts Bowman has heretofore paid him.

*Decree for Beardsmore.*

MIDDLETON, P. J., and THOMAS, J., concur.