UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-2959

———————

GREGORY ADDINGTON,

Appellant

v.

SENIOR VICE PRESIDENT HUMAN RESOURCES
CONSOL ENERGY, INCORPORATED, as Plan Administrator
of the Consol Energy Inc Flexible Benefits Program Long Term
Disability Plan; LIBERTY LIFE ASSURANCE COMPANY OF BOSTON;
AMANDA PIPENBACHER, also know as Amanda Quinto

———————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-17-cv-00444)
District Judge: Honorable Marilyn J. Horan

———————

Submitted under Third Circuit LAR 34.1(a)
On April 16, 2020

Before: CHAGARES, SCIRICA and ROTH, <u>Circuit Judges</u>

(Opinion filed: December 30, 2020)

———————

OPINION[*]

———————

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

ROTH, <u>Circuit Judge</u>

After Gregory Addington's disability benefits were terminated, he sued the administrators of the plan seeking continued payment of them. He appeals the District Court's decision to grant summary judgment against him. For the reasons that follow, we will affirm.

I.

Addington began working as an underground section foreman at Consol Energy in May 1992. As an employee at Consol, he participated in its Health and Welfare Plan, under which Consol served as the plan administrator and Liberty Life Assurance Company served as the claims administrator. In January 2012, Addington stopped working as a result of chronic knee, back, and neck conditions. He received short-term disability benefits through the Plan from February 2012 to August 2012. Liberty subsequently approved Addington for long-term disability (LTD) benefits. To be eligible for LTD benefits under the Plan, a claimant "must become Totally Disabled."[1]

The Plan gives Consol and Liberty considerable discretion. By its terms, Consol has "the discretionary authority to determine eligibility[,] . . . interpret plan provisions[,] . . . and decide issues of credibility and fact" while Liberty has "the discretionary authority and power to construe all terms, provisions, conditions and limitations of the Plan."[2] The Plan also specifically states that Consol and Liberty have the "sole discretion to

---

[1] App. 191.
[2] App. 202.

2

determine what is Suitable Employment for any individual and what is a reasonable compensation for that position."[3]

As required by the Plan, Addington applied for Social Security disability benefits and was found eligible by the Social Security Administration (SSA) in December 2012.[4] After he was found eligible for Social Security disability benefits, Liberty requested an update regarding his conditions and received a note from his primary care physician, stating that Addington was "unable to return to work as coal miner" and "permanently disabled for all work activities."[5] In October 2013, Liberty received additional information from the primary care physician as well as from a pain management specialist. A medical file review was then conducted by Dr. Lisa Nocera. Based on Dr. Nocera's conclusion that Addington was not impaired and had "no restrictions or limitations,"[6] Addington's case manager at Liberty advised him in December 2013 that his LTD benefits were no longer payable because he was not precluded "from performing the material and substantial duties of [his] occupation or any occupation" and thus was no longer totally disabled under the Plan.[7] Addington appealed that determination in June 2014. About a month later, Liberty reinstated his benefits retroactively.[8]

---

[3] App. 200.
[4] Liberty was informed of this development, and in January 2013 requested that Addington return a sum equivalent to the back pay Addington received from the Social Security Administration for being disabled from July to December 2012.
[5] App. 234, 1185.
[6] App. 1098.
[7] App. 1089–1092.
[8] App. 1061.

Addington had knee replacement surgery in August 2015. The surgeon informed Liberty after the surgery that he believed Addington could return to work in January 2016 with accommodations and could return to "full duty" work in February 2016.[9] The surgeon also replied "no" when asked whether Addington was "being disabled by [his] office."[10] A vocational rehabilitation consultant for Liberty reviewed Addington's medical records and concluded that there were three occupations that Addington could perform, based on his education, training, and current physical capacities: maintenance dispatcher, production scheduler, and work order clerk.[11] On January 20, 2016, Addington was informed by Liberty that his benefits were no longer payable because he was no longer totally disabled. The letter noted Addington's surgery and stated that Liberty had "fully considered the Social Security Administration's ruling to approve Social Security Disability benefits."[12]

On July 15, 2016, Addington again appealed the termination of his benefits and submitted additional medical records. A few days later, Liberty informed Addington that it had completed its review of his request for reconsideration and determined that benefits were payable.[13]

Liberty referred Addington's medical records for additional peer review. The report of this review, dated August 24, 2016, contained a detailed list of the records

---

[9] App. 993–94.
[10] App. 993.
[11] App. 989–91.
[12] App. 985–88.
[13] App. 653.

4

reviewed and a summary of Addington's medical history. The reviewing physician noted Addington's Social Security disability benefits and recounted his conversation with Addington's primary care physician, who maintained that he did not believe Addington could return to any work. The reviewing physician opined that Addington could "sustain full time work capacity" with certain restrictions on lifting, sitting, walking and overhead activity.[14] The vocational expert identified four occupations that were within Addington's education, training, and current physical capacities: maintenance dispatcher, production scheduler, work order clerk, and expediter.[15]

On September 7, 2016, the Liberty case manager informed Addington that Liberty had completed a thorough review of his "continued eligibility for disability benefits" and determined that his benefits were no longer payable. The letter recited the definition of disability under the Plan, summarized the conclusions of the reviewers, and stated that because Liberty determined that he could perform the suggested occupations with reasonable continuity, he no longer met the definition of total disability under the Plan. The letter also noted that Liberty had "fully considered the Social Security Administration's ruling to approve Social Security Disability benefits" to Addington.[16]

By letter dated December 1, 2016, Addington again appealed. Liberty requested another peer review report. This physician opined that Addington was functionally impaired, but generally prescribed lesser restrictions than the previous reviewer. Four

---

[14] App. 439.
[15] App. 423–24.
[16] App. 421.

5

days later, Liberty denied Addington's appeal by letter. The letter cited the conclusions of the reviewers and stated that Liberty "did fully consider the Social Security Administration's ruling" to award Social Security benefits to Addington.[17]

In response, Addington sued Consol and Liberty alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA), specifically 29 U.S.C. § 1132(a)(1)(B).[18] Both sides moved for summary judgment. In granting Consol and Liberty's motion, the District Court concluded that "[e]ven when viewing the facts of record and the reasonable inferences drawn therefrom in the light most favorable to [Addington], [Consol and Liberty had] shown that no reasonable jury could find that Liberty reached the determination at issue in an arbitrary or capricious fashion such that the determination should not be upheld."[19] On appeal, Addington argues that the District Court's grant of summary judgment against him was erroneous.[20]

---

[17] App. 263–67.

[18] The complaint contained a second cause of action under state law that was dismissed below. Addington does not appeal that dismissal.

[19] App. 29.

[20] Addington also asserts that the District Court erred in refusing to consider deposition testimony regarding Liberty's claims process. Because "under most circumstances, the record for . . . review of ERISA benefits denial is the record made before the plan administrator, and cannot be supplemented during litigation," *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 (3d Cir. 2010) (internal quotation marks omitted), deposition testimony obtained during the course of litigation would ordinarily not be part of the record. One exception to this bar against supplemental evidence is "evidence of potential biases and conflicts of interest that is not found in the administrator's record." *Id.* However, Addington neither points to the kind of bias or conflict of interest that is the subject of that exception, nor does he identify another exception.

"We review the District Court's grant of summary judgment de novo," applying "the same standards and presumptions as the District Court."[22]  To prevail on summary judgment, the moving party must show that there is no genuine dispute of material fact, with all facts "viewed in the light most favorable to the non-moving party" and "all reasonable inferences drawn in that party's favor."[23]  Because the Plan confers on Consol and Liberty the discretionary authority to determine eligibility for benefits, construe the terms of the Plan, and decide issues of fact, we must apply the arbitrary and capricious standard when we review their denial of benefits, their interpretations of the Plan, and their factual findings.[24]  An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.[25]  An administrator's factual findings are not arbitrary and capricious when they are supported by substantial evidence.[26]  We have defined "substantial evidence" to mean relevant evidence that "a reasonable mind might accept as adequate."[27]

In Addington's view, his medical records establish his total disability as the Plan defines that term.  He argues that Consol and Liberty's determination to the contrary was

---

[21] The District Court had jurisdiction to hear the case under 28 U.S.C. § 1331, 29 U.S.C. § 1132(e), and 28 U.S.C § 1367.  We have jurisdiction over this appeal under 28 U.S.C. § 1291.

[22] *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 249 (3d Cir. 2019).

[23] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (internal quotation marks omitted).

[24] *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120–21 (3d Cir. 2012).

[25] *Id.* at 121 (internal quotation marks omitted).

[26] *Id.*

[27] *Id.* (internal quotation marks omitted).

arbitrary and capricious because (1) Liberty's decision to deny him benefits conflicts with the weight of the medical evidence, (2) Liberty failed to consider the SSA's decision to award him disability benefits, (3) Liberty abruptly reversed course during his appeals process by deciding to pay his benefits before finally terminating them one month later based on substantially the same record, and (4) Liberty acted inequitably in denying him benefits after it had identified occupations paying substantially less than the benefits he was entitled to. Even viewing the record in the light most favorable to Addington and drawing all reasonable inferences in his favor, we disagree.

First, Liberty's decision was not against the weight of the medical evidence. The following facts are not in dispute. After Addington's knee surgery, his operating physician, opined that he could return to work in January 2016 with accommodations and in February 2016 with no accommodations. Liberty's letters of denial in September 2016 and January 2017 cited the reports provided by the physicians who reviewed Addington's medical records and concluded that despite his impairments Addington could work with certain accommodations. The vocational expert provided her analysis based on the restrictions prescribed by the reviewing physicians. Finally, Liberty relied on the vocational expert's suggestions to conclude that Addington could engage in suitable employment and was thus not totally disabled under the Plan.

Addington relies primarily on the opinion of his primary physician who consistently opined that Addington is totally disabled. However, Liberty was not

required to "accord special deference to the opinions of treating physicians."[28] To the extent that Addington challenges specific conclusions drawn by physicians and analysts employed or contracted with by Liberty, we decline to "substitute [our] own judgment for that of the defendants in determining eligibility for plan benefits."[29] Our role is to determine whether Liberty's decision to deny Addington benefits was arbitrary and capricious. On these facts, we cannot conclude that Liberty's decision was so.

Second, Addington's belief that Liberty failed to consider the SSA's decision to award him disability benefits is unsubstantiated. Addington acknowledges that Liberty stated in its letters to him in September 2016 and January 2017 that it had considered the SSA's ruling in denying his claim. However, he characterizes Liberty's statement as "boilerplate language." Addington relies, ultimately, on Sixth Circuit precedent holding that a reviewing court "should weigh [a plan administrator's failure to explain why it is taking a position different from the SSA] in favor of a finding that the decision was arbitrary or capricious."[30] However, Liberty did explain in those letters why it was taking a different position from the SSA, stating on both occasions that its review included vocational and medical assessments that were not considered by the SSA.[31]

Third, the record does not support Addington's belief that Liberty abruptly reversed course in September 2016 by denying his benefits after approving his benefits

---

[28] *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003)

[29] *Orvosh v. Program of Grp. Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000) (quoting *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).

[30] *Bennett v. Kemper Nat. Servs., Inc.*, 514 F.3d 547, 554 (6th Cir. 2008). .

[31] App. 266, 421.

9

the month before.  The facts establish that the August 2016 letter was not a final determination on Addington's eligibility, but an interim determination while a full investigation was being carried out.  The fact that a file review that included Addington's additional submissions was conducted after the August 2016 letter likewise points to the same conclusion.  Thus, we find no questionable aspect of or inconsistency among Liberty's pre-final decisions that could serve as evidence that Liberty abused its discretion.

Finally, Addington argues that it is inequitable for defendants to avoid liability by identifying occupations that earn less than his benefit level.  The Plan, however, does not tie a claimant's eligibility for benefits to the pay the claimant may receive from an identified occupation.  Because Liberty has identified full-time employment in positions that Addington was trained or qualified to perform, it had a sufficient basis to exclude Addington from the definition of total disability under the Plan.  Accordingly, Addington's challenge on this ground must fail.

III.

For the foregoing reasons, we conclude that Consol and Liberty's denial of Addington's benefits was not arbitrary and capricious,  Accordingly, we will affirm the District Court's grant of summary judgment in their favor.

10