**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2702
_____

RUARI C.,
by and through his parents,
Ronan C. and Beth C. of Yardley, Pennsylvania,
Appellant

v.

PENNSBURY SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-22-cv-04080)
District Judge: Honorable Gerald J. Pappert
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 25, 2024

Before: JORDAN, McKEE, and AMBRO *Circuit Judges*

(Opinion filed: August 2, 2024)

_____

OPINION[*]
_____

---

[*]This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Circuit Judge*.

Ruari C., along with his parents, Ronan C. and Beth C., appeal the District Court's order affirming the decision of a Pennsylvania Special Education Hearing Officer denying their claim for private school tuition reimbursement under the Individuals with Disabilities in Education Act and Section 504 of the Rehabilitation Act. For the reasons that follow, we will affirm.[1]

## I.

From the middle of third grade through eighth grade, Ruari attended St. Ignatius School. That is a private school, and Ruari's attendance was funded by Pennsbury through a settlement agreement. Under the terms of the settlement agreement, Pennsbury was required to evaluate Ruari and offer him an individualized education program for the 2021-2022 school year. On April 27, 2021, Pennsbury completed a reevaluation report. The reevaluation included information from multiple sources: input from Ruari's teacher and Parents; observations from two psychologists; academic and achievement testing; speech/language evaluation; behavior and emotional assessments; autism Diagnostic Observation Schedule, Second Edition ("ADOS-2"); autism Spectrum Rating Scales; and a functional behavioral assessment.

Because of the COVID-19 pandemic, the psychologist could not implement the standardized ADOS-2 test and had to make some modifications like wearing masks. As a result, the assessment was not scored. Instead, the psychologist relied on "anecdotal

---

[1] We have jurisdiction under 28 U.S.C. § 1291.

observations" made during the test, as well as other assessment measures to determine if Ruari met the educational classification of autism.[2] From observations during the ADOS-2, the psychologist determined that "Ruari demonstrated difficulties with reciprocal social interaction and communication, difficulty with flexible thinking and imaginative play, some difficulty fully understanding emotional responses, difficulties forming and maintaining social relationships, behavioral rigidity, and repetitive behaviors."[3] Based upon multiple assessments and Ruari's previous diagnosis of autism in 2016, Ruari was found eligible to receive IDEA services under a primary disability category of autism. He also was identified as gifted.

Pennsbury issued a proposed IEP that included, among other things, instruction in social skills for ninety minutes every other day in the autistic support classroom. Parents rejected the IEP and placement. Parents informed Pennsbury that they were sending Ruari to Holy Ghost, a private parochial school, and requested that Pennsbury pay the tuition. Parents also hired a psychologist to conduct another evaluation of Ruari.

The private psychologist also administered the ADOS-2, as well as other assessments, and made a nonstandard modification to the ADOS-2 by requiring masks to be worn due to the pandemic. Despite this modification, she scored the ADOS-2. While the private psychologist observed that Ruari had rigidity, preservative behaviors, repetitive behaviors, and exhibited social awkwardness and isolation, she determined that

---

[2] App. 190.
[3] App. 192.

3

Ruari had "minimal to no symptoms of autism."[4] Additionally, she testified that the autistic support classroom was not appropriate for Ruari because he does not have autism.

The Family filed a due process complaint alleging that Ruari was denied a free appropriate public education and sought tuition reimbursement. The Hearing Officer held that Pennsbury offered Ruari a FAPE and denied the request for tuition reimbursement. The Family filed an appeal, and the District Court affirmed the administrative decision.

**II.**

"When considering an appeal from a state administrative decision under the IDEA, district courts apply a nontraditional standard of review, sometimes referred to as 'modified de novo' review."[5] Under this standard, "a district court gives 'due weight' and deference to the findings in the administrative proceedings."[6] "'Factual findings from the administrative proceedings are to be considered prima facie correct,' and if the reviewing court does not adhere to those findings, it is 'obliged to explain why.'"[7] Unlike a claim brought under the IDEA, a district court applies de novo review to a Section 504 claim.[8] We review a district court's findings of fact for clear error and exercise plenary review

---

[4] App. 129.
[5] *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010).
[6] *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)).
[7] *Id.* (quoting *S.H. v. State–Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)).
[8] *Le Pape v. Lower Merion Sch. Dist.*, 103 F.4th 966 (3d Cir. 2024).

over the legal standards it applies and its legal conclusions.[9] Whether an IEP is appropriate is a question of fact.[10]

## III.

"Parents who believe that a public school is not providing a FAPE may unilaterally remove their disabled child from that school, place him or her in another school, and seek tuition reimbursement for the cost of the alternate placement."[11] Parents are entitled to tuition reimbursement if the public school fails to provide a FAPE and the private placement is appropriate.[12]

The Family contends that Pennsbury denied Ruari a FAPE by incorrectly concluding that he has autism and consequently providing him with an inappropriate IEP. The Family argues that the Hearing Officer and the District Court legally erred by using the pandemic as an "excuse" to accept observations from the improperly administered ADOS-2 and to label Ruari as autistic without the evidentiary support necessary to satisfy the legal definition of autism.[13] The Family further argues that even if the District Court did not commit legal error, its factual finding that Ruari has autism is clearly erroneous. Pennsbury disputes that the District Court committed legal or factual error.

Evaluations of students may not rely on "any single measure or assessment as the sole criterion."[14] Rather, they must "use a variety of assessment tools and strategies" and

---

[9] *D.S.*, 602 F.3d at 564.
[10] *S.H.*, 336 F.3d at 271.
[11] *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 242 (3d Cir. 2009).
[12] *Id.*
[13] Opening Br. 24–26.
[14] 20 U.S.C. § 1414(b)(2)(B).

rely on "technically sound instruments" to determine whether a child has a disability and, if so, to determine an appropriate educational program for the child.[15] A student with "a developmental disability significantly affecting verbal and nonverbal communication and social interaction . . . that adversely affects a child's educational performance" may be identified as having autism.[16]

The Hearing Officer concluded that Ruari's autism classification was proper but noted that the evidence supporting the classification was "weak."[17] The District Court affirmed Ruari's autism finding that "[a]lthough the Hearing Officer acknowledged that 'evidence supporting an autism classification was weak when the 2021 RR was completed,' such a conclusion is not entirely consistent with the record, given the results and interpretations of all the other testing and observations performed and conducted."[18] The District Court further remarked, "In any event, the Hearing Officer found the evidence that resulted in a diagnosis of autism 'was also the best information that the District could gather at the time.'"[19] The Family relies on these statements to argue that the District Court's conclusion that Ruari has autism is an error of law because it is based on the District Court's mistaken belief that the pandemic could excuse an improperly administered ADOS-2 and a lack of sufficient evidence to support Ruari's autism identification.

---

[15] 20 U.S.C. § 1414(b)(2)(A), (C).
[16] 34 C.F.R. § 300.8(c)(1)(i).
[17] App. 49.
[18] App. 12 (quoting Hr'g Officer's Op. 19, ECF 5-3).
[19] App. 12 (quoting Hr'g Officer's Op. 19, ECF 5-3).

6

However, neither the Hearing Officer nor the District Court relied on the pandemic to reach an unsupported finding that Ruari has autism. The Hearing Officer recognized that "COVID-19 school closures and safety measures do not abrogate any child's right to a FAPE. . . . COVID-19 safety measures cannot be used as a defense against an inappropriate evaluation."[20] The Hearing Officer explained that if Pennsbury had relied only on the non-standardized ADOS-2, "the result may be different."[21] However, the Hearing Officer found the evidence sufficient to support Ruari's autism classification because Pennsbury "relied upon multiple measures and assessments, most of which were not altered in any way."[22] The District Court affirmed the Hearing Officer's decision because Pennsbury's "autism diagnosis was multifactorial, and it demonstrated caution by only using the ADOS-2 for anecdotal purposes while relying on other assessments when reaching its autism diagnosis."[23] The District Court concluded that Ruari's autism diagnosis was consistent with the record evidence, which included "input from Ruari's parents, his teachers, observations of Ruari, his prior diagnostic history of autism, as well as observations from the BASC-3, BRIEF-2 and the ASRS."[24]

The District Court did not legally or factually err when it concluded that Ruari has autism because his evaluation was based on multiple assessments that were technically

---

[20] App. 49 n.12.
[21] App. 49 n.12.
[22] App. 49 n.12.
[23] App. 14.
[24] App. 14.

sound and indicated that he exhibits characteristics of autism.[25] Moreover, even if we thought there was a basis for saying that the diagnosis of autism was not adequately supported by the record, we would still affirm the conclusion that Ruari was offered a FAPE. The Family contends that the IEP did not provide him with an education in the least restrictive environment by requiring that he spend ninety minutes every other day in the autistic support classroom. Because "the proposed IEP [would have] provide[d Ruari] with a meaningful educational benefit,"[26] the Family's claim fails.

An appropriate IEP is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."[27] The "IDEA requires that disabled students be educated in the least restrictive *appropriate* educational environment."[28] To check this mainstreaming requirement, "[t]he first step is for the court to determine whether the school can educate the child in a regular classroom with the use of supplementary aids and services."[29] If it cannot, "the next step is to decide whether the school is mainstreaming the child to the maximum extent possible."[30]

Pennsbury's IEP easily satisfies this test. It shows that Pennsbury considered keeping Ruari in the regular classroom for the full day, with the use of supplementary

---

[25] The Family makes much of the fact that Ruari was not identified as having autism before he reached the age of three. While autism is "generally evident before age three," "[a] child who manifests the characteristics of autism after age three could be identified as having autism." 34 C.F.R. § 300.8(c)(1)(i), (iii).

[26] *S.H.*, 336 F.3d at 271.

[27] *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).

[28] *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 249 (3d Cir. 1999).

[29] *S.H.*, 336 F.3d at 272.

[30] *Id.*

aids and services, as well as supplemental autistic support, but rejected these options for two reasons: first, because "Ruari require[d] direct, explicit instruction in social skills/functional needs" and, second, because to deliver that instruction in the general classroom would not enable him to make progress in the general classroom, would displace more instructional time, and would not permit him to interact with peers.[31] Turning to the second step, Pennsbury's IEP would have mainstreamed Ruari for nearly all his time in school, with only ninety minutes every other day of specialized social skills education. There is ample evidence in the record to support his need for that education whether or not his autism identification was proper, and it matters little whether he received this instruction in an environment labeled as the autistic support classroom.

In sum, we agree with the District Court that Ruari was offered a FAPE and the Family was not entitled to tuition reimbursement.

## IV.

For the above reasons, we will affirm the judgment of the District Court.

---

[31] App. at 261.